283 So.2d 849 (1973)
ALPHONSE BRENNER COMPANY, INC., Plaintiff-Appellant,
v.
Heron R. DICKERSON, Defendant-Appellant,
Elizabeth Flanigan Hedlund Hennen Dickerson, Defendant-Appellee.
No. 12011.
Court of Appeal of Louisiana, Second Circuit.
September 11, 1973.
Smitherman, Smitherman, Lunn & Hussey, by Stuart D. Lunn, Frederic L. Miller, Shreveport, for Alphonse Brenner Co., Inc.
*850 James B. Gardner, Curator ad hoc, Shreveport, for Heron R. Dickerson.
Feist, Schober & Howell, by James Fleet Howell, Shreveport, for Elizabeth Flanigan Hedlund Hennen Dickerson.
Before BOLIN, PRICE and HALL, JJ.
PRICE, Judge.
Alphonse Brenner Company, Inc. filed this suit against Heron R. Dickerson and his wife, Elizabeth Dickerson, to recover $3,353.19, the unpaid balance owing for purchases made by Mrs. Dickerson. At the time this action was filed Mr. and Mrs. Dickerson had separated and each filed an answer denying liability for the indebtedness. Dickerson predicates his defense on the theory his wife had no authority to obligate him or the community of acquets and gains for these credit purchases. Mrs. Dickerson alleged in answer the indebtedness is a community obligation for which she is not responsible.
After trial on the merits judgment was rendered in favor of plaintiff against Heron R. Dickerson but dismissing its action against Mrs. Dickerson. Dickerson suspensively appealed from this adverse judgment and plaintiff appealed to preserve its rights against Mrs. Dickerson.
During the pendency of this appeal Dickerson died. Pursuant to Rule XIII of the Uniform Rules of the Courts of Appeal of the State of Louisiana, a curator ad hoc was appointed to represent the unknown succession representative of Dickerson's Succession, and these proceedings were contradictorily conducted against him.
The following facts are undisputed: in the fall of 1969 Mr. and Mrs. Dickerson were married and living together at 5935 Gilbert Drive, Shreveport, Louisiana. Beginning in August, 1969, Mrs. Dickerson began a series of purchases from the Alphonse Brenner Company, Inc. The first purchase on or about August 1, 1969, was for $250 worth of patio furniture which was paid for by check at the time of purchase.
On August 4, she placed an order with plaintiff for installation of carpeting for the Dickerson residence in the amount of $2,380.50. Pursuant to a satisfactory credit check, an account was opened in Dickerson's name and this purchase was charged to the account. The carpeting was installed August 26 and full payment was received from Dickerson for this purchase on September 23, 1969.
On September 17, at Mrs. Dickerson's request, plaintiff delivered two nightstands and table lamps to defendants' residence. These items, amounting to $370.40 in cost, were charged to Dickerson's account and were paid for in full, on October 21, less $50 deducted for reinstalling some heaters disconnected during the carpet installation.
On October 10, Mrs. Dickerson placed an order for custom-made draperies and bedspreads amounting to $3,352.99. Requisitions for the necessary materials were placed by plaintiff on October 14 and work began October 16. It is this order which forms the basis of the instant law suit.
On October 14, Mrs. Dickerson ordered additional drapes for another room costing $1,133.33, which were installed and paid for at a later date.
On November 11, plaintiff completely redecorated a game room at defendants' home at the request of Mrs. Dickerson. Mr. Dickerson was not satisfied with the furnishings and wrote to Brenner's on November 13 as follows:
"According to the verbal agreement we had for remodeling the living room and game room at my residence, if it was not satisfactory to me then you would replace it as it was at no cost to me. Please replace it as it was immediately.
"In the future, please do not work at my house unless you have my written approval."
*851 As the merchandise plaintiff used in this room was regular stock items, plaintiff allowed it to be returned for credit.
Plaintiff's agent, on or about December 15, 1969, informed Mrs. Dickerson that the custom-made bedspreads and drapes ordered by her on October 10 were ready for delivery. She advised she was not ready for them at that time and delivery and installation was postponed. Plaintiff again attempted delivery around January 20, 1970, and was again put off by Mrs. Dickerson. Actual delivery of the bedspreads was made around February 3, 1970. Delivery and installation of the custom-order drapes was never accomplished.
By letter dated January 19, Dickerson sent plaintiff a check for $1,468.10 with instructions to pick up some items per his November letter. By letter dated January 29, 1970, Dickerson sent plaintiff another check for $786.45 along with instructions to close his account as of that date. Dickerson sent another letter dated March 2, 1970, again advising plaintiff to immediately close his account, and that he would not be responsible for any purchases made and charged to him after February 27, 1970.
Dickerson was billed for the total cost ($3,353.19) of the custom drapes and bedspreads on February 27, 1970. He advised plaintiff by letter on May 18, 1970, he had no knowledge of these purchases by Mrs. Dickerson and did not intend to pay for same.
The trial judge found that under the circumstances Dickerson had clothed his wife with apparent authority to contract for these debts on behalf of the community and that he was therefore liable for the amount of the purchases in dispute.
We find the credit transactions consummated by Mrs. Dickerson with plaintiff and subsequently ratified by Dickerson either by payment or acceptance of delivery of merchandise prior to the disputed purchase order at issue herein, were sufficient to justify a conclusion that Mrs. Dickerson had apparent authority to make credit purchases for household furnishings in her husband's name.
The initial purchase made by Mrs. Dickerson on August 4, 1969, which led to the opening of an account by plaintiff in Dickerson's name, was for a substantial amount $2,380.50. Dickerson paid this charae promptly when billed without complaint. He immediately thereafter allowed delivery of additional items costing in excess of $370.
Plaintiff was justified in believing Mrs. Dickerson was authorized to make credit purchases on behalf of her husband when she placed the October 10 order for custom-made draperies and bedspreads. Although the evidence does not show Dickerson was aware of these purchase orders until some time after February 27, 1970, when billed for same, he is nevertheless liable therefor under the implied agency doctrine developed by the jurisprudence of this state. D. H. Holmes Company v. Terry, 58 So.2d 840 (Orl.La.App., 1952); Neiman-Marcus v. Viser, 140 So.2d 762 (La.App., 2d Cir. 1962); Goldring's, Inc. v. Seeling, 139 So.2d 538 (La.App., 4th Cir. 1962).
The general rule as stated by this court in Neiman-Marcus v. Viser, supra, is particularly apposite to the circumstances involved herein and we quote the pertinent discussion from that case:
"Our conception of the law is that, when one clothes another with apparent authority to act for him, insofar as a third party is concerned, he will not be permitted to deny that fact; that is, where a person, by his acts or conduct, has knowingly caused or permitted another to appear as his agent to the injury of third persons, who have dealt with the apparent agent in good faith and in the exercise of reasonable prudence, he will be estopped *852 to deny the agency. * * * The principal is, therefore, bound by the engagements contracted by his agent or mandatary conformably to the power confined to him (LSA-C.C. Art. 3021). Where the husband authorized and permitted the wife to use his name and credit to obtain merchandise from plaintiff, she was acting in the capacity of his agent and he is, therefore, liable, as principal, for the purchase price of merchandise. D. H. Holmes Co. v. Terry, supra.
"The principal, of course, may revoke the mandate, power of attorney, or contract of agency and compel the agent to deliver evidence of his authority (LSA-C.C. Art. 3028). Francis v. Bartlett, La.App. 2d Cir., 1960, 121 So.2d 18. This, the defendant husband attempted to do by letter addressed to plaintiff. However, this attempted revocation was ineffectual, having been given after the purchases were made.
"As a general rule, where a third person has been dealing with an agent, a revocation of the agent's authority does not become effective between the principal and the third person subsequently dealing with the agent as such until such third person has received actual or constructive notice of such revocation. Consequently, such third person may assume that the authority of the agent continues until he has information to the contrary...." [140 So.2d 762, 765, 766]
The first notification by Dickerson to plaintiff to do no more work at his residence without his written permission was several weeks after placement of the disputed order by Mrs. Dickerson and does not absolve him from responsibility for these purchases. The evidence shows that at the time this communication was received by plaintiff the work on the order for custom-made draperies and bedspreads had progressed to such a point to justify plaintiff in refusing to cancel this order.
Having concluded the trial court was correct in rendering judgment solely against Dickerson, there is no necessity to consider the issue raised by the appeal of plaintiff relating to failure of the court to hold Mrs. Dickerson also responsible, as plaintiff concedes on this appeal that this is an alternative position adopted only in the event the court found no liability on the part of Dickerson.
For the foregoing reasons, the judgment appealed from is affirmed at appellant's costs.
The fee of the attorney appointed by this cost as Curator Ad Hoc to represent the unknown legal representative of the deceased appellant, is hereby fixed at $100 and taxed as costs.