hGASKINS, Judge.
The plaintiff, Quinn-L Corporation Baton Rouge II Partnership, appeals from a trial court judgment finding that the defendant, Shreveport Bank & Trust, did not breach its duty to the plaintiff in allowing an unauthorized individual to withdraw partnership funds on deposit in the bank. For the following reasons, we affirm the trial court judgment.
FACTS
The plaintiff in this case is the Quinn-L Corporation Baton Rouge II Partnership, a Louisiana partnership in commendam, doing business as Jefferson Oaks II Apartments (the partnership). The partnership was formed on December 28,1977 to construct an apartment complex in Baton Rouge. L.H. Bossier, Inc. and Midstate Sand & Gravel were partners and Quinn-L Corporation (the corporation) was named as the general partner. S. Mark Lovell, the president and sole shareholder of the corporation, was authorized to act on behalf of the partnership. On April 10, 1981, the corporation was removed as general partner and the power of attorney held by Mr. Lovell was revoked. L.H. Bossier, Inc. was installed as the general partner and Thomas R. Elkins, a Baton Rouge attorney and businessman, was authorized to act for the partnership. At a partnership meeting on April 13, 1981, the removal of the corporation and Mr. Lovell was affirmed. On June 5, 1981, minutes of these meetings were filed into the mortgage records in East Baton Rouge Parish, where the partnership is domiciled.
The partnership had three accounts with Shreveport Bank and Trust (which is now Hibernia Bank.) On July 2,1982, Mr. Elkins telephoned Shreveport Bank & Trust (the bank), informing it that Mr. Lovell and the corporation were no longer entitled to act on behalf of the partnership and requesting that the bank forward all funds on deposit with the bank in the name of Jefferson Oaks II laApartments to L.H. Bossier, Inc. On July 20,1982, Mr. Elkins sent a letter to the bank making a written request for the transfer of funds. This letter was on a plain sheet of paper with no letterhead. The bank responded that some authorization was required before the funds could be transferred to Mr. Elkins and L.H. Bossier, Inc. The bank suggested that the partnership submit signed authorization forms from the corporation, stating that the funds could be released to L.H. Bossier, Inc. The letter also indicated that if Mr. Elkins had any questions, he should contact the bank.
Mr. Elkins was unsuccessful in getting the corporation to sign an authorization for the bank. He took no further action on this matter for several years, other than to contact the bank at the end of each year to determine the amount of interest credited to the accounts for preparation of the partnership tax return. Mr. Lovell remained the only person listed on the signature card with the bank as the proper party to deal with the partnership funds.
In February 1986, $26,000 was withdrawn by Mr. Lovell from a partnership account with the bank. The plaintiff did not become aware of the withdrawal until late January or early February 1987. In March 1987, Mr. *1080 Lovell attempted to withdraw additional partnership funds in the amount of $2,600, but was prevented from doing so by the bank. The plaintiff then sent copies to the bank of the 1981 partnership meeting minutes showing that the authority of the corporation and Mr. Lovell was revoked and L.H. Bossier, Inc. was named general partner, with Mr. Elkins authorized to act on its behalf. The plaintiff, through Mr. Elkins, made amicable demand upon the bank for the return of the $26,000 wrongfully issued to Mr. Lovell. The bank refused and the plaintiff filed suit.
The plaintiff contended that Mr. Elkins’ 1982 phone call and letter to the bank, informing it that the corporation was no longer the general partner of the Ispartnership, was sufficient to provide the bank with adequate actual notice that Mr. Lovell was not authorized to withdraw partnership funds. The plaintiff also argued that, because the partnership meeting minutes, revoking the authority of the corporation and Mr. Lovell, were filed in the mortgage records in East Baton Rouge Parish, the bank had constructive notice of the revocation of authority. The plaintiff claimed that the bank breached its duty of ordinary care to the plaintiff and sought to recover the funds wrongfully issued, along with legal interest from the date of the withdrawal.
The bank argued that Mr. Lovell was the only person listed on the signature card with the bank and that prior to the withdrawal by him, the partnership never furnished adequate documentation that Mr. Lovell’s authority had been revoked. The bank’s policy was that funds would be released only to those listed on the signature card. The bank asserted that the 1982 letter from Mr. Elkins was on blank letterhead and gave no indication that he was an attorney or was acting on behalf of the partnership. The bank argued that it requested documentation from Mr. Elkins and received nothing until after the withdrawal of funds. The bank also contended that it was not liable to the plaintiff for the return of the funds because the plaintiff failed to comply with the provisions of La. R.S. 6:315, which specifies the proper procedure for notifying a bank of an adverse claim to funds on deposit.
The matter was tried on September 19, 1995. The parties stipulated to most of the pertinent facts. The issue before the court was whether the plaintiff had furnished the bank with adequate notice that Mr. Lovell and Quinn-L Corporation were no longer authorized to act on behalf of the partnership so as to make the bank liable for allowing an unauthorized withdrawal of funds. The trial court found in favor of the bank, holding that there was not sufficient actual or constructive notice to the bank of the revocation of authority to the corporation and LMr. Lovell. The court reasoned that the notice given to the bank in 1982 by L.H. Bossier, Inc. was dubious and equivocal and was not substantiated with proper documentation until one year after the withdrawal. The court found that the bank was justified in assuming the authorization of Mr. Lovell was still effective until it had sufficient information to the contrary. The court rejected the plaintiffs argument that filing the partnership meeting minutes into the mortgage records of East Baton Rouge Parish gave the bank constructive notice of the revocation of the authority of the corporation and Mr. Lovell. The court reasoned that constructive notice only applies where recordation is required by law and such was not required in the present case. Because the trial court found that the bank was not required to return the funds, the issue of the applicability of La. R.S. 6:315 was not reached. The plaintiff appealed the trial court judgment.
ADEQUATE NOTICE
The plaintiff argues that the trial court erred in finding that the bank did not have sufficient actual notice of the revocation of authority of the corporation and Mr. Lovell to act on behalf of the partnership. The plaintiff argues that La. C.C. art. 3029 stands for the proposition that, once a third person receives notice of the revocation of authority, it can no longer transact with an agent to bind the principal. The plaintiff argues that the notice given to the bank in 1982 by Mr. Elkins was sufficient for the bank to furnish the plaintiff with interest information on the *1081 accounts for several years. The plaintiff also contends that the bank never asked for partnership documents until after the -wrongful withdrawal of funds by Mr. Lovell. The plaintiff further argues that even though the bank contends that it will release funds only to the party listed on the signature card, it denied Mr. Lovell’s second attempt to withdraw partnership funds. The plaintiff, also asserts that the issue in this case is whether there was adequate notice of 15r evo cation of authority to withdraw funds, not whether there was adequate documentation to transfer the funds to L.H. Bossier and Mr. Elkins. The plaintiff argues that the bank breached its duty of ordinary care in allowing the corporation to withdraw the partnership funds and the partnership is entitled to damages in the amount of the principal and legal interest from the date of the withdrawal on February 28, 1986 until paid. These arguments are without merit.
The issue in this case is whether the telephone call and letter by Mr. Elkins to the bank in 1982 constituted sufficient notice that the corporation and Mr. Lovell no longer had authority to act on behalf of the partnership. Under the facts presented in this case, we find that the trial court correctly found that this was not sufficient notice of the revocation of authority. In this ease, when the limited partnership was formed in 1977, the corporation was named as the general partner, authorized to act on behalf of the partnership through Mr. Lovell. Under La. C.C. art. 3028, a principal may revoke the authority of its agent to act on its behalf. Unless a principal notifies third persons of the revocation of authority of an agent to act on behalf of a principal, the principal continues to be bound by the acts of the agent. La. C.C. art. 3029. As stated in Neimarir-Marcus v. Viser, 140 So.2d 762 (La.App. 2d Cir.1962), as a general rule, where -a third person has been dealing with an agent, a revocation of the agent’s authority does not become effective between the principal and third person subsequently dealing with the agent until such third person has received actual or constructive notice of the revocation. Consequently, such third person may assume that the authority of the agent continues until he has information to the contrary.
In Neimwnr-Marcus v. Viser, supra, and Alphonse Brenner Co., Inc. v. Dickerson, 283 So.2d 849 (La.App. 2d Cir.1973), this court held that notice to a third party of the revocation of authority of an agent was not effective when made | (¡after the agent acted. These two cases dealt with the timeliness of notification. As noted by the plaintiff, neither these two cases nor any jurisprudence construing La. C.C. art 3029 provides guidance as to the sufficiency of notice of revocation of an agent’s authority. We make no hard and fast rule as to the degree of notice necessary to be deemed sufficient in all cases. Simply based upon examination of the specific facts of this case, we find that, in this instance, the 1982 phone call and letter by Mr. Elkins to the bank were insufficient to provide the bank with actual notice of the revocation of the authority of the corporation and Mr. Lovell.
We first note that the record fails to establish that Mr. Elkins or L.H. Bossier, Inc. were familiar entities to the bank. The record shows that in 1982, Mr. Elkins called the bank, requesting a transfer of partnership funds. This telephone call was followed by Mr. Elkins’ letter of July 20, 1982, stating that the corporation was the former general partner of the partnership and had been replaced by L.H. Bossier, Inc. The letter requested the release of funds in three partnership bank accounts and listed the account numbers and balances. The letter, written on plain paper with no letterhead, is signed by Mr. Elkins as the secretary of L.H. Bossier, Inc. No partnership documents proving the change in general partner accompanied the letter. According to the bank, bogus requests for the release of funds are a frequent occurrence. At that point, the bank had before it a communication from an unknown entity claiming entitlement to the release of partnership funds. At best, this letter served to cause the bank to make further inquiry into the matter, which it promptly did.
On August 3, 1982, the bank sent a letter to Mr. Elkins, informing him that the bank could not release funds without written no *1082 tice from the corporation, authorizing the bank to do so. It was suggested that Mr. Elkins contact the corporation and have it send the bank the necessary authorization forms. Mr. ^Elkins testified that, at that point, he expected the bank to request partnership documents demonstrating the authority of L.H. Bossier, Inc. to act on behalf of the partnership. However, he failed to provide these documents which were in his possession at the time and which would have cleared away any doubt as to which party was truly authorized to act on behalf of the partnership.
Instead, Mr. Elkins testified that relations between the corporation and L.H. Bossier, Inc. were not good and it was not possible to obtain authorization forms from the corporation. When he failed to get the corporation or Mr. Lovell to furnish authorization forms to the bank, Mr. Elkins did nothing else. He failed to contact the bank informing it that is would not be possible to obtain authorization for the corporation and seeking another acceptable course of action to protect the partnership funds. Mr. Elkins, acting on behalf of the partnership, took no further action to protect partnership assets on deposit in the bank or to establish the legitimacy of his assertions.
In subsequent years, the bank did provide L.H. Bossier, Inc. with information as to the amount of interest accruing to each account. This information was necessary for the preparation of partnership income tax returns. However, this fact fails to establish that the bank recognized L.H. Bossier, Inc. as the general partner of the partnership. We also note that in 1987, after the disputed withdrawal of funds by Mr. Lovell, the bank required L.H. Bossier, Inc. to obtain authorization from the corporation before interest information would be released.
The plaintiff also argues that the bank refused to allow Mr. Lovell to withdraw partnership funds on a second occasion, showing that the bank was aware that Mr. Lovell was acting without authority. However, at that time of the second attempted withdrawal, the bank had once again been contacted by Mr. Elkins, asserting Mr. Lovell’s lack of authority to act on behalf of the partnership. |sThe bank then requested that Mr. Elkins submit partnership documents establishing the change in general partner. Mr. Elkins furnished the partnership documents at that point.
Based upon the 1982 phone call and letter, the bank did not have sufficient actual notice of the revocation of authority to the corporation and Mr. Lovell to act on behalf of the partnership. These communications served only to cause the bank to make further inquiry into the alleged lack of authority on the part of the corporation and Mr. Lovell. The bank’s inquiry was met with silence by Mr. Elkins and L.H. Bossier, Inc. Under the facts at that point, the bank did not have sufficient actual notice that Mr. Lovell and the corporation were no longer authorized to act on behalf of the partnership. The trial court was correct in holding that, at that point, the notice to the bank was dubious and equivocal. Therefore, the bank breached no duty to the partnership in allowing Mr. Lo-vell to withdraw partnership funds.
APPLICABILITY OF LA. R.S. 6:315
The trial court did not reach the issue of the applicability of La. R.S. 6:315 to the facts of this case. The trial court concluded that, because there was not adequate notice of the revocation of authority of the corporation and Mr. Lovell, relieving the bank of liability to the partnership for the wrongful withdrawal of partnership funds, it was not necessary to reach the issue of the applicability of La. R.S. 6:315. However, we find that this statute applies in the present case and further supports our holding that the bank is not hable to the partnership for the wrongful withdrawal of partnership funds.
La. R.S. 6:315 provides in pertinent part: A. Notice to any bank of an adverse claim, including an adverse claim of ownership of, right to control, or access to funds, to a deposit standing on the books of the bank to the credit of any person 19does not require the bank to recognize the adverse claimant unless the notice is given pursuant to either a restraining order, injunction, or other appropriate process against the bank in an action instituted by the adverse claimant wherein the person to *1083 whose credit the deposit stands is made a party and served with summons, or the adverse claimant has executed to the hank, in form and with sureties acceptable to it, a bond indemnifying the bank against any liability, loss, damage, costs, and expenses on account of payment or of dishonor of the check or other order of the person to whose credit the deposit stands. However, this Section does not apply where the person to whose credit the deposit stands is a fiduciary for the adverse claimant, and the facts constituting this relationship, as well as the facts showing reasonable cause of belief on the part of the claimant that his fiduciary is about to misappropriate the deposit, are made to appear by the affidavit of the claimant.
B. (1) A bank shall be entitled to act and rely upon:
(a) A restraining order, injunction, or other appropriate process;
(b) An agreement of the parties concerning an adverse claim;
(c) A bond indemnifying the bank against liability, as provided in Subsection A.
(2) Unless the restraining order, injunction, or other appropriate process specifically provides to the contrary, a bank with notice of an adverse claim to a deposit as provided herein may terminate the deposit account and transfer the contested funds into the registry of the court issuing the restraining order, injunction, or other appropriate process, or into the registry of a court of competent jurisdiction located in the parish in which the bank is located.
(3) No bank, acting in reliance upon this Section, shall be liable to the depositor, adverse claimant, or any other person or entity for nonpayment, termination of the deposit account, or for any other damage alleged to have been caused by the bank’s reliance on this Section notwithstanding the final disposition of the adverse claim....
This statute sets forth the manner in which a bank may properly be notified of an adverse claim to funds on deposit. The jurisprudence construing this statute holds that the failure to comply with the enumerated methods of notifying the bank of an adverse claim results in a lack of notice. In Bank of Sunset & Trust Company v. Chariot, 614 So.2d 1386 (La.App. 3d Cir.1993), a bank was found not to have |i0notice of an adverse claim to a bank account where a wife obtained a judgment for spousal support in another state, ordering the garnishment of the husband’s Louisiana bank account. The foreign judgment was not made executory in this state. Because the judgment had no legal efficacy in Louisiana and because the wife failed to comply with the provisions of La. R.S. 6:315, it was held that the bank had no notice of an adverse claim to the husband’s bank account.
In the present case, as stated above, in order to protect the partnership assets on deposit with the bank, Mr. Elkins and L.H. Bossier Inc. could have promptly furnished the bank with partnership documents establishing the change in general partner. Mr. Elkins and L.H. Bossier, Inc. could also have utilized the notice provisions of La. R.S. 6:315 to prevent Mr. Lovell from making an unauthorized withdrawal of partnership funds. The partnership argues that this statute is not applicable to this ease. It contends that the partnership is the “person to whose credit the account stands” and it could not make an adverse claim for its own funds. This argument is without merit.
We agree that the partnership is the entity to whose credit the account stands. Even though L.H. Bossier, Inc., acting through Mr. Elkins is the general partner, it is not synonymous with the partnership. The dispute in this case concerns which entity was properly authorized to act on behalf of the. partnership. When the account was opened, the partnership established the authority of the corporation and Mr. Lovell to act on its behalf. L.H. Bossier, Inc., acting through Mr. Elkins, was an adverse claimant to the right of control or access to partnership funds previously established in Mr. Lovell and the corporation. Under the provisions of the statute, Mr. Elkins and L.H. Bossier, Inc. should have obtained a restraining order, injunction or other appropriate process prohibiting the corporation and Mr. Lovell from disposing of partnership funds until proper authority could be established.
*1084 The statute also provides that, because Mr. Elkins and L.H. Bossier, Inc. did not comply with the provisions of the statute to provide notice to the bank of its adverse claim to the authority of Mr. Lovell and the corporation, the bank could not recognize those _ claims. Therefore, because the bank was not properly notified of an adverse claim to the right of access or control to the funds owned by the partnership, the bank is not hable for the wrongful withdrawal of partnership funds made by Mr. Lovell.
CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court, in favor of the defendant, Shreveport Bank and Trust, now Hibernia National Bank, dismissing the claims of the plaintiff, Quinn-L Corporation Baton Rouge II Partnership. Costs are assessed to the plaintiff.
AFFIRMED.