**Wayne G. QUASHA, et al.,
Plaintiffs-Appellants,**

v.

**SHALE DEVELOPMENT CORPORA-
TION, et al., Defendants-Appellees.**

**No. 81–3099.**

United States Court of Appeals,
Fifth Circuit.

Feb. 12, 1982.

Blanchard, Walker, O'Quin & Roberts, Wm. Paul Lawrence, II, Clyde W. Thurmon, J. Jay Caraway, Shreveport, La., for plaintiffs-appellants.

John M. Madison, Jr., Shreveport, La., for defendants-appellees.

Before THORNBERRY, TATE and WILLIAMS, Circuit Judges.

TATE, Circuit Judge:

The Quashas appeal from the dismissal of their Louisiana diversity suit for lack of personal jurisdiction. The plaintiffs filed suit for breach of an alleged contract to purchase certain Louisiana mineral interests. On the defendants' motion, the district court dismissed for lack of personal jurisdiction. Finding that the plaintiffs showed sufficient minimum contacts with Louisiana to justify the exercise of *in personam* jurisdiction and that maintenance of this suit in Louisiana does not offend traditional notions of fair play and substantial justice, we reverse the district court's decision.

*Facts*

In December 1978, the plaintiffs, citizens of New York, advertised the sale of certain oil and gas properties located in Texas and Louisiana. The defendant, Shale Development Corporation (a Nevada corporation), through its president, Delbert Thomas (a California resident), responding to the Quashas' ad wrote to Louisiana to request a bid package from their agent. In response, they were mailed a brochure from Louisiana describing each property; the package also included an invitation to submit bids and a bid reply sheet to be submitted to Wayne G. Quasha, in care of accountant William Burroughs in Shreveport, Louisiana.

On January 23, 1979, Thomas completed and mailed to Burroughs in Louisiana a bid on certain mineral properties in Louisiana.[1] On February 2, 1979, Wayne Quasha sent Thomas a telegram from Shreveport stating that

Your bid of $405,000.00 ... and your bid of $245,000.00 ... are acceptable subject

---

1. The two parcels in question are immovable properties located in Webster and Bossier Parishes, Louisiana, as described in Quasha Oil Properties Brochure No. 2 and No. 3.

to deposit in escrow of ten (10%) per cent as earnest money on or before 12:00 noon, Monday, February 5, 1979, said earnest money to be forfeited upon failure to consummate the transaction . . . .

Please accept the above by return telegram . . . .

Thomas replied, by telegram to Quasha's attorney in Shreveport, on February 2, 1979 stating: "We acknowledge receipt of your acceptance wire of our bid . . . and concur with conditions." No money was ever placed in escrow, as required by the plaintiff's telegram, or paid toward the purchase price. Both properties were ultimately sold to a third party for $200,000.00 each.

In July, 1979, the plaintiffs Quasha then brought suit against the defendants for the breach of their alleged agreement to purchase, claiming damages of $250,000.00 (the difference between the price bid by the defendants for the two parcels and the sales price actually received by the plaintiffs when they subsequently sold the properties to third persons.) Jurisdiction was grounded on diversity and service was made on both defendants pursuant to the Louisiana Long-Arm Statute, Louisiana Revised Statutes 13:3201, et seq.[2] Following oral argument on the defendants' motion to dismiss for lack of personal jurisdiction, the district court granted the motion and denied the plaintiffs' motion for rehearing.

In granting the defendants' motion, the trial court stated that the "sole question before this court is whether the above dealings constitute sufficient contact with the State of Louisiana to justify this court's exercise of *in personam* jurisdiction over the defendants." After discussing the two-prong test ("minimum contacts" and "fair play") for determining whether due process permits the assertion of Louisiana *in personam* jurisdiction, the district court concluded that neither test was met in this case. The district court ruled that there were insufficient minimum contacts with the State of Louisiana because the plaintiffs had failed to make a prima facie showing of the existence of a contract with the defendants and, furthermore, while further proceedings might give the plaintiffs an opportunity to develop a prima facie showing of a contract, the exercise of *in personam* jurisdiction in this case would violate traditional notions of fair play and substantial justice.

*Jurisdiction Under the Louisiana Long-Arm Statute*

The Quasha plaintiffs assert jurisdiction over the defendants under the Louisiana Long-Arm Statute, La.R.S. 13:3201(a) and (e), which provide that

A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's

(a) transacting any business in this state;

\* \* \* \* \* \*

(e) having an interest in, using or possessing a real right or immovable property in this state.

In a diversity action, federal court jurisdiction over a nonresident defendant

---

2. La.R.S. 13:3201 provides

§ 3201. *Personal jurisdiction over nonresidents*

A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's

(a) transacting any business in this state;

(b) contracting to supply services or things in this state;

(c) causing injury or damage by an offense or quasi offense committed through an act or omission in this state;

(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(e) Having an interest in, using or possessing a real right or immovable property in this state; or

(f) Non-support of a child or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.

(g) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.

extends only to the limits permitted by the long-arm statute of the forum state. *Moore v. Lindsey*, 662 F.2d 354, 357–58 (5th Cir. 1981); *Gold Kist Inc. v. Baskin-Robbins Ice Cream*, 623 F.2d 375, 377 (5th Cir. 1980); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 489 (5th Cir. 1974).

■ The Louisiana Long-Arm Statute is to be interpreted liberally in favor of finding jurisdiction, *Thompson v. Great Midwest Fur. Co.*, 395 So.2d 840, 843 (La.App. 1st Cir. 1981); *Latham v. Ryan*, 373 So.2d 242, 244 (La.App. 3rd Cir. 1979), and is to extend to the full limits of due process under the fourteenth amendment. *Austin v. North American Forest Products*, 656 F.2d 1076, 1089 (5th Cir. 1981); *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630, 639–41 (5th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981); *Adcock v. Surety Research and Investment Corp.*, 344 So.2d 969, 971 (La. 1977); *Thompson v. Great Midwest Fur. Co., supra*, 395 So.2d at 843; *Latham v. Ryan, supra*, 373 So.2d at 244.

*Due Process Requirements*

■ To comport with due process requirements in asserting *in personam* jurisdiction, a nonresident defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In making the determination, this court considers first, whether the defendant purposefully availed itself of the benefits and protection of the forum state's laws, and second, whether the state has any special interest in providing a forum for the suit and whether the relative conveniences and inconveniences of the parties favor litigating in another forum. *Austin v. North American Forest Products, supra*, 656 F.2d at 1089; *Standard Fittings Co. v. Sapag, S.A., supra*, 625 F.2d at 641–43; *Product*

*Promotions v. Cousteau, supra*, 495 F.2d at 494–98.

In deciding that the exercise of jurisdiction in this case would violate due process, the district court first determined that the plaintiffs failed to establish a prima facie showing of the existence of a contract with the defendants, and, thereby, failed to establish certain "minimum contacts" between the defendant and the forum state of Louisiana. Second, the court ruled that, even if such a prima facie showing could be made, it would not be "fair" to require Shale to defend this suit in Louisiana.

### A. "Fairness" of Louisiana Forum

As the district court seemed to find this second (or "fairness") ruling dispositive, we will turn our attention to this point. The district court found particularly important the fact that the main issue in the present suit involved contract damages, not the title to the property in Louisiana [3] (since the Quashas had previously sold the mineral properties to a third party purchaser); that the plaintiffs were not Louisiana residents that the state would be seeking to protect; and that, as both parties were nonresidents, if the plaintiffs must suffer some inconvenience in litigating in a foreign forum, the defendants should not be required to suffer that same inconvenience. Upon review of the factors involved in this case, we find that it is not unfair nor unreasonable under the circumstances to require Shale to defend this suit in Louisiana.

Louisiana has a legitimate and reasonable interest in providing a forum for this lawsuit. Louisiana has a special interest in negotiations regarding the sale of mineral property located within the state, characterized by Louisiana law as "immovable" property (*i.e.*, in common law terms, as "realty").

■ Initially, we note that, whether the suit is brought in Louisiana or in California, nevertheless under accepted conflict princi-

---

**3.** The district court did recognize in its memorandum ruling that Louisiana had an interest in providing a forum in this case, but felt the interest was not strong enough to outweigh other factors.

ples the law of Louisiana, the situs of the mineral property, will govern the validity of the contract to sell the immovable property and the rights created thereby. Restatement, Conflict of Laws 2d, §§ 189, 223 (1971).[4] Further, with regard to the alleged confection of the contract, the bids were received in Louisiana, the offer and counter-offer were made from Louisiana, and the acceptance of the counter-offer was sent to and received in Louisiana—Louisiana factual indicia, governed by the applicable Louisiana law.

Additionally important, if the defendants had in fact deposited the funds in escrow and sought to enforce the contract, then—not only would Louisiana law govern the validity of the contract—the defendants would also ultimately have been required to resort to Louisiana courts to enforce a decree rendered in another jurisdiction relating to the contract. As the Supreme Court noted, the "[c]ourts of one State are completely without jurisdiction directly to affect title to land in other States," *Durfee v. Duke*, 375 U.S. 106, 115, 84 S.Ct. 242, 247, 11 L.Ed.2d 186 (1963), citing earlier decisions, such as *Fall v. Eastin*, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909) (which held that, for this reason, Nebraska courts were not required to give full faith and credit to a Washington order that decreed the conveyance of Nebraska land, 215 U.S. at 8–12, 30 S.Ct. at 6–8).

Thus, the defendants, when bidding for the property, intended to acquire an interest in Louisiana property in a situation where the validity of the transaction would be governed by Louisiana law and where it was foreseeable that the contract itself might ultimately be enforceable by Louisiana courts. We therefore do not have an instance of "unilateral activity of those who claim some relationship with a nonresident defendant [, which] cannot [by itself] satisfy the requirement of contact with the forum State," but rather an instance where the "essential" requirement is met "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958).

■ Weighing the relative convenience or inconvenience to each party of litigating in Louisiana is not decisive in this situation. While the defendants obviously would find it more convenient to litigate in the home state, on the other hand most witnesses and evidence would more readily be available in the Louisiana forum at the situs of the property.[5] Defending the present suit in Louisiana will not cause Shale or Thomas any more hardship than for them to have come to Louisiana to assert their right to the property in question—the potential hardship they assumed by participating in acts in Louisiana with the aim of entering

---

4. § 189. *Contracts for the Transfer of Interests in Land*

 The validity of a contract for the transfer of an interest in land and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the land is situated unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

 § 223. *Validity and Effect of Conveyance of Interest in Land*

 (1) Whether a conveyance transfers an interest in land and the nature of the interest transferred are determined by the law that would be applied by the courts of the situs.

 (2) These courts would usually apply their own local law in determining such questions. *See also Succession of Simms*, 250 La. 177, 195 So.2d 114, 127–29 (1965), *cert. denied*, 389 U.S. 850, 88 S.Ct. 47, 19 L.Ed.2d 120 (1966); *Cummings v. Bullock*, 367 F.2d 182, 183 (9th Cir. 1966). As stated by *Montgomery v. Samory*, 99 U.S. 482, 482, 25 L.Ed. 375, 375 (1879), "the title to real estate is governed by the laws of the place where it is situated; the universal rule being that the title to such property can only be acquired, passed, or lost according to the *lex loci rei sitae*."

5. The plaintiffs assert that the testimony of such witnesses as the Louisiana attorney and accountants who handled the negotiation for the plaintiffs and local experts on oil and gas property evaluation might be necessary on the merits of the case.

into a contract to purchase Louisiana immovable (real) property. In the situation before us, we are not persuaded that the inconvenience to the defendants "rises to the level of a denial of due process." *Products Promotion v. Cousteau, supra,* 495 F.2d at 498.

We therefore concede that, under the present facts, the maintenance of this suit against Shale on a contract to purchase [6] immovable property in Louisiana will not "offend 'traditional notions of fair play and substantial justice.'" *International Shoe, supra,* 326 U.S. at 316, 66 S.Ct. at 158.

B. *"Minimum Contacts" with Louisiana*

The district court stated that the existence of a contract to be performed in the state could establish the requisite "minimum contacts," *Gold Kist, Inc. v. Baskin-Robbins Ice Cream Company, supra,* 623 F.2d 375, 382 n.5 (5th Cir. 1980); *Product Promotions, Inc. v. Cousteau, supra,* 495 F.2d at 495–96, but then went on to hold that no prima facie existence of a contract to sell had been established.

 We first note that this court has emphasized that in applying the "minimum contacts" prong of the due process test, the number of contacts with the forum is not determinative, but the contacts must support an inference that the nonresident defendant purposefully availed himself of the benefits of the forum state, *Product Promotion v. Cousteau, supra,* 495 F.2d at 495, and that even activities outside one state can fulfill this requirement if they have reasonably foreseeable consequences within the state. *Id.* 495 F.2d at 496. See *World-Wide Volkswagen Corporation, et al. v. Woodson,* 444 U.S. 286, 296, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).[7] As we recognized in *Standard Fittings Co. v. Sapag, S.A., supra,* 625 F.2d at 640–41, for the purposes of *in personam* jurisdiction under the Louisiana Long-Arm Statute, since the statute extends to the full limits of due process, "finalization of the negotiation process" is not required. *Id.* 625 F.2d at 641.

We further disagree with the district court's characterization of the transactions involved. As earlier noted, Louisiana law governs the validity and interpretation of this contract to buy/sell Louisiana immovable property.

The initial offer to purchase was made by Shale in its bid reply form. The February 2, 1979 telegram from the Quashas was characterized by the trial court as a "conditional acceptance." In Louisiana the acceptance must conform in all things to the offer, La.C.C. art. 1805,[8] otherwise it amounts to a new offer (counteroffer) which must be accepted in order to bind the parties. La.C.C. arts. 1806, 1808.[9] *Louisi-*

---

**6.** This court has previously acknowledged the distinction drawn in Louisiana jurisprudence between the exercise of in personam jurisdiction over nonresident buyers and nonresident sellers, *Riverland Hardwood Co. v. Craftsman Hardwood Lumber Co.,* 259 La. 635, 251 So.2d 45 (1971). While expressing no opinion on the soundness of this distinction, we recognized that such consideration should be only one factor in the due process analysis relative to the quality of the defendant's contact with the forum. *Standard Fittings Co. v. Sapag, S.A., supra,* 625 F.2d at 639 n.18. The Louisiana Supreme Court has not addressed this issue, but it seems apparent that *Riverland Hardwood* is not controlling in this case. Here the purchaser of immovable property in Louisiana, as opposed to the purchaser of goods, clearly foresaw a continuing connection with the state of Louisiana and intended to avail itself of the benefits of the forum state.

**7.** In *World-Wide Volkswagen* the Supreme Court addressed the issue of foreseeability— "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* 444 U.S. at 296, 100 S.Ct. at 567.

**8.** *Art. 1805. Variance between offer and acceptance.* The acceptance to form a contract must be in all things conformable to the offer; any condition or limitation contained in the acceptance of that which formed the matter of the offer, gives him, who makes the offer, the right to withdraw it.

**9.** *Art. 1806. Modification in acceptance as new offer.* This takes place, even when more is promised than was demanded, or when less is offered than was required; for example, if a request is made to borrow fifty dollars, and the party answers that he will lend one hundred dollars; or, if the request be to

*ana State Board of Education v. Lindsay,* 227 La. 553, 79 So.2d 879, 887 (1954).

The telegram from the Quashas contained the condition that ten percent earnest money be deposited in escrow by a certain date. This condition effectively transformed the expected acceptance into a counteroffer.[10] The return telegram from Shale, "acknowledg[ing] receipt of [the] acceptance wire ... and concur[ing] with conditions," must be viewed as Shale's acceptance, evidencing the intent of the defendants to agree to the condition in the counteroffer before the escrow deposit was made.

Under Louisiana law the contract of sale is perfected when there exists an agreement, an object, a price, and when, for immovables, the agreement is reduced to writing. La.C.C. art. 2456.[11] The sale may be made subject to a condition. La.C.C. art. 2457. A conditional obligation in Louisiana depends on an uncertain event, La.C.C. art. 2021; however, the contract itself may have been created by consent of the parties. Article 2028 of the Civil Code provides

> Art. 2028. *Completion of conditional contract by general rule of consent*
>
> Art. 2028 The contract of which the condition forms a part is, like all others, *complete by the assent of the parties; the obligee has a right of which the obligor can not deprive him; its exercise is only suspended, or may be defeated,* according to the nature of the condition. [emphasis added].

We thus find that the plaintiffs have made a prima facie showing of the existence of a contract to be performed in Louisiana sufficient to justify the assertion of *in personam* jurisdiction over the defendants in Louisiana. However, as the district court noted, the enforceability of this contract, under the present circumstances, is a question which addresses itself more to the merits of the suit than to the issues raised by the motion to dismiss for lack of personal jurisdiction. We therefore do not decide this issue.

*Conclusion*

For the reasons stated above we find first, that the plaintiffs have established sufficient minimum contacts with Louisiana as to support an inference that the nonresident defendants intended to purposefully avail themselves of the benefits of conducting business in Louisiana, and second, that requiring the defendants to litigate this cause of action in Louisiana does not offend traditional notions of fair play and substantial justice. Accordingly, we REVERSE the district court's ruling and REMAND for a decision not inconsistent with this opinion.

REVERSED and REMANDED.

borrow one hundred dollars, and the answer that fifty will be lent, there is no obligation in either case, without a further assent of the borrower to take the one hundred, in the first case, and the fifty in the other; for the proposal to borrow fifty does not necessarily imply an assent to borrow one hundred, nor does the proposal to lend one hundred necessarily imply a desire to lend only fifty. The modification or change of the proposition is, in all respects, considered as a new offer, and the party making it, is bound by the acceptance in the same manner as if the original proposition had been made by him.
*Art. 1808. Necessity for acceptance of new offer.* But a consent to give anything else, although of a greater value than that contained in the offer, or to give the same or a larger sum at a different term of payment, does not imply an assent to the offer, and there is in that case no obligation.

**10.** While the plaintiffs' telegram evidenced an intent to condition the terms of the defendants' original bid, the second sentence—"Please accept the above by return telegram ..."—evidenced an intent to be bound by the defendants' acceptance of this new or counteroffer.

**11.** Under Louisiana jurisprudence, an agreement for the sale of immovables, which is not yet a completed sale as it does not transfer ownership, is a "contract *to* sell." La.C.C. art. 2462 provides that it amounts to a sale insofar as it gives either party the right to enforce performance.