Bobby E. DIXON, Sr. and Gailya W. Dixon, Appellants,

v.

VAN WATERS AND ROGERS, A DIVISION OF UNIVAR COMPANY, Appellees.

No. 2–83–149–CV.

Court of Appeals of Texas, Fort Worth.

July 12, 1984.

Jenks Garrett, Arlington, for appellants.

Jearl Walker, Fort Worth, for appellees.

Before FENDER, C.J., and HUGHES and HILL, JJ.

OPINION

HUGHES, Justice.

Appellants, Bobby E. Dixon, Sr., and Gailya W. Dixon, filed a products liability suit against appellees, Van Waters and Rogers, for damages relating to the death of their son, Bobby E. Dixon, Jr. After a jury verdict and judgment in favor of appellees, appellants bring this appeal.

We affirm.

Appellants assign eleven points of error. In their first point, appellants contend that the jury's answer to Special Issue No. 1 is incorrect as a matter of law because there is no evidence or, alternatively, there is insufficient evidence that appellees gave adequate warnings concerning the dangers of inhaling the fumes from the hydrochloric acid. Appellants assert in their second point of error that as a matter of law there is no evidence or insufficient evidence that appellees gave adequate warnings concerning the dangers of inhalation of the fumes by those users with underlying lung diseases to support the jury's answer to Special Issue No. 1. In point of error three, appellants argue that the jury's answer to Special Issue No. 1 is incorrect as a matter of law because there is no evidence or there is insufficient evidence that appellees gave adequate instructions for the safe use of the product concerning the dangers of inhalation of the fumes from the hydrochloric acid.

Because appellants attack the sufficiency of the evidence, we must set forth below the salient facts.

Mitchell Clark Kuppinger, M.D., testified at the trial. He first saw the decedent on April 2, 1979. At that time decedent was complaining of a cough and shortness of breath on exertion. Kuppinger explained to the decedent that he had interstitial pulmonary fibrosis and began treating the decedent with Prednisone. Kuppinger's diagnosis was verified from records made in 1974 by other doctors. By April 9, 1979, decedent's cough had disappeared, and he had less shortness of breath. Decedent was still doing well on May 3, 1979. Kup-

pinger next saw decedent on May 14, 1979. Decedent's cough was worse than before with sputum and he was experiencing shortness of breath. Decedent told Kuppinger that he had been cleaning pools with hydrochloric acid. Decedent was admitted to the hospital on May 14, 1979. He appeared to be acutely ill, was wheezing, had trouble breathing and had pulmonary hypertension. Although decedent experienced initial improvement, his condition deteriorated and he was pronounced dead on May 25, 1979.

Kuppinger had warned decedent to avoid inhaling noxious substances such as smoke, dust and toxic fumes but had not specifically warned decedent to avoid inhalation of hydrochloric acid fumes. A study done of patients with this form of chronic lung disease showed that ten years after initial diagnosis of the disease, 70% will have died. Another study suggested that the younger a patient is at the time of diagnosis, the better the patient will do. It was Kuppinger's opinion that, based on his initial examination of the decedent, the decedent's life expectancy, although shortened, could have been measured in years.

On cross-examination, Kuppinger testified that decedent had suffered constant respiratory problems as an infant and was hospitalized on numerous occasions during childhood for cough and pulmonary problems. Open lung surgery was performed on decedent in 1974. Diagnosis was interstitial pulmonary fibrosis.

Kuppinger also testified that after the initial examination decedent was treated with Prednisone which reduces the body's ability to fight bacterial infection, increases the risk of infection and may make diagnosis of an infection difficult. No test was performed to connect hydrochloric acid to decedent's illness because none is available.

Kuppinger stated on the death certificate that the causation factor of death was inhalation of hydrochloric acid fumes. On cross-examination, however, he testified it was mere speculation that the fumes caused the bronchitis which resulted in decedent's death. Kuppinger also testified

that a person with normal lungs would not have been affected by the hydrochloric acid.

Fred Herold, Operations Manager for appellee company, testified concerning the uses and use of hydrochloric acid. Herold stated that the key to avoid breathing the vapors of the hydrochloric acid is to use with adequate ventilation. Hydrochloric acid is a corrosive which is used in industry and in homes for cleaning swimming pools, removing algae and as a germicide in pools. The acid emits a pungent odor which irritates the nasal passages. Inhalation would cause coughing, eyes to water or burning in the nostrils. Hydrochloric acid is readily available in retail stores.

The various warnings used on the drums of hydrochloric acid by appellee are set forth below in our discussion of appellants' fourth point of error and will not be set forth here.

■■■■ The law is clear that if a manufacturer knew or should have known of the potential harm its product could cause to a user, the manufacturer is obligated to give an adequate warning concerning such dangers. *Bristol-Myers Co. v. Gonzales*, 561 S.W.2d 801, 804 (Tex.1978). Whether the warning given is adequate in view of the user and the circumstances is a question for the fact finder. *Pearson v. Hevi-Duty Elec.*, 618 S.W.2d 784, 787 (Tex.Civ.App.— Houston [1st Dist.] 1981, writ ref'd n.r.e.).

■■■■ In our review of appellants' "no evidence" point, it is fundamental that the jury's fact findings must be upheld by us if there is more than a scintilla of evidence in support thereof. *Stedman v. Georgetown S. & L. Ass'n*, 595 S.W.2d 486, 488 (Tex. 1979). There is some evidence, more than a scintilla, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). Moreover, in testing these findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and

rejecting the evidence and inferences contrary to the findings. *Stedman, supra;* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEXAS L.REV. 361 (1960).

■ On the other hand, when we confront a challenge that the evidence is insufficient, we must consider and weigh all the evidence in the case, including that which is contrary to the verdict. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). We must determine whether the verdict was so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In other words, this court must decide if the evidence which supports the jury's answers to the special issues is so weak, or the evidence to the contrary is so overwhelming, as to warrant setting aside of the verdict and remanding for a new trial. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); *Calvert, supra.*

■ In reviewing the evidence we find that the evidence is sufficient to support the jury's finding and such finding was not against the overwhelming weight and preponderance of the evidence. Appellants' points of error one, two and three are overruled.

In their fourth point of error, appellants maintain that the trial court erred in failing to admit plaintiffs' exhibit number 31. Plaintiffs' exhibit number 31 was a copy of a label from a container of hydrochloric acid such as the one involved in the instant case. The actual label taken from the container of hydrochloric acid in question was admitted into evidence as plaintiffs' exhibit number 1.

Plaintiffs' exhibit number 1 contained the following warning:

WARNING! CAUSES BURNS

KEEP OUT OF REACH OF CHILDREN.

Avoid contact with skin and eyes. Avoid breathing vapor. In case of contact, immediately flush skin or eyes with plenty of water for at least 15 minutes; for eyes, get medical attention.

Plaintiffs' exhibit number 31 contains the following warning:

DANGER! CAUSES BURNS, KEEP OUT OF REACH OF CHILDREN. Do not get in eyes, on skin, on clothing. Avoid breathing vapor. Keep container closed. Use with adequate ventilation. Wash thoroughly after handling. When handling, use protective, splash-proof safety goggles, rubber gloves and rubber or plactic apron.

The only difference between the two warnings is the addition of the words "Use with adequate ventilation." Appellants contend that the exclusion of plaintiffs' exhibit number 31 was tantamount to the exclusion of evidence of a failure to warn or of an inadequate warning.

■ Plaintiff's exhibit number 19 which was admitted into evidence is a label from a container of hydrochloric acid. The warning shown on this label is as follows:

DANGER! CAUSES BURNS. KEEP OUT OF REACH OF CHILDREN. Do not get in eyes, on skin, on clothing. Avoid breathing vapor. Keep container closed. *Use with adequate ventilation.* Wash thoroughly after handling. When handling, use protective splash-proof safety goggles, rubber gloves, and rubber or plastic apron. (Emphasis supplied.)

The warning contained in plaintiffs' exhibit number 31 is identical to the warning contained in plaintiffs' exhibit number 19. The admission of plaintiffs' exhibit number 31 would have been cumulative of other evidence already admitted. The exclusion of cumulative evidence is harmless error, if error at all. *Reina v. General Acc. Fire & Life Assur.,* 611 S.W.2d 415, 417 (Tex. 1981). Point of error four is overruled.

■ In point of error five appellants argue that the trial court erred in instructing the jury that there is no duty to warn a user who possesses knowledge concerning the dangerous characteristics of a product if the risks are actually known to the user. Appellants argue that the "no duty" con-

cept is no longer the law in Texas because the "no duty" doctrine was expressly abolished by the Supreme Court in *Parker v. Highland Park Inc.*, 565 S.W.2d 512 (Tex. 1978). While the Supreme Court did expressly abolish the "no duty" concept, that Court expressly abolished the doctrine "in the trial of all actions based on negligence." The instant case was filed, pleaded, and presented as an action based on strict liability.

In strict liability cases, the Supreme Court has held that a plaintiff who knows and appreciates the danger from a particular product and who has the opportunity to avoid the harm but continues to use the product, assumes the risk of the use of the product and his recovery is barred. *General Motors Corp. v. Hopkins*, 548 S.W.2d 344, 351 (Tex.1977); *Shamrock Fuel & Oil Sales Co. v. Tunks*, 416 S.W.2d 779, 783 (Tex.1967). Therefore, the submission of the instructions was not error. Appellants' point of error five is overruled.

■ In point of error six appellants contend that because there was no evidence, or alternatively, insufficient evidence, for the jury to believe and to find that the decedent had actual knowledge of the product's dangerous characteristics, the trial court erred in instructing the jury that there is no duty to warn a user who has knowledge of the dangerous characteristics of a product if the risks are actually known to the user. As noted above this court must decide if the evidence supporting the jury's finding is so weak or if the evidence to the contrary is so overwhelming as to warrant setting aside the verdict. After reviewing the evidence we find that it is not. Point of error six is overruled.

■ Appellants contend in point of error seven that the trial court erred in submitting Special Issue No. 4 because there was no evidence or alternatively, insufficient evidence to show that the decedent had actual knowledge of the risk which caused his injury. By Special Issue No. 4 the jury was charged:

Do you find from a preponderance of the evidence that Bobby Eugene Dixon, Jr.,

assumed the risk of inhaling vapors of the hydrochloric acid on the occasion in question?

After our review of the evidence we find that the issue was a correct submission. Point of error seven is overruled.

In point of error eight appellants argue that the trial court erred in refusing to submit to the jury plaintiffs' Requested Instructions 10a and 10b. Instruction 10a states that "[m]ere knowledge of a general hazard or hazardous nature of a product is insufficient to satisfy the requirements of assumption of the risk." Requested Instruction 10b states that "[i]t must be shown that the user had actual knowledge of the dangerous condition and did appreciate the danger not that the user may have or should have." The Requested Instructions 10a and 10b are similar in substance to the trial court's instruction to the jury concerning "assumed risk". The trial court instructed the jury that:

"Assumed risk" means that in order for the user to have assumed the risk, he must actually have known of the risk charged to have caused the injury and he must have actually and fully have appreciated the nature and extent of the danger involved in encountering the condition and he must voluntarily and of his own free will have encountered the danger of the condition causing his injury.

There is no error in refusing a requested explanatory instruction if the substance of the matter contained in the requested instruction was included in the court's charge. *Grohn v. Marquardt*, 657 S.W.2d 851, 856 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Point of error eight is overruled.

By point of error nine, appellants urge that the trial court erred in submitting Special Issue No. 4 because such submission compounded and amplified the errors stated in points of error one through five. Because we found no errors in points of error one through five, we overrule appellants' point of error nine.

In point of error ten, appellants argue that the trial court erred in overruling appellants' motion for new trial because the jury's answer of "O" to all of the damages issues was incorrect as a matter of law, or in the alternative, so against the great weight and preponderance of the evidence as to be manifestly unjust. The jury found no liability on the part of appellees. We have previously found that the jury's finding was not against the great weight and preponderance of the evidence. Appellants' tenth point of error is overruled.

 In point of error eleven, appellants argue that the trial court erred in overruling their motion for new trial because the errors set forth in points of error one through ten when combined constitute cumulative error which was reasonably calculated to cause and probably did cause the rendition of an improper verdict. As a result of our disposition of points of error one through ten, we find no cumulative error and overrule point of error eleven.

Judgment affirmed.