TEXAS COMMERCE BANK
NATIONAL ASSOCIATION,
Appellant,

v.

INTERPOL '80 LIMITED
PARTNERSHIP,
Appellee.

No. 13–85–142–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 12, 1985.

Kem Thompson, Liddell, Sapp, Zivley, Brown & LaBoon, Houston, for appellant.

James R. Harris, Harris, Cook, Browning, Jordan & Hyden, Corpus Christi, for appellee.

Before NYE, C.J., UTTER and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from an order granting Appellee's special appearance motion. Appellant, Texas Commerce Bank National Association (Texas Commerce), filed suit against Appellee, Interpol '80 Limited Partnership (Interpol), a foreign limited partnership, to collect $63,076.77 allegedly due pursuant to a contract. The trial court ruled that Interpol had not engaged in business in Texas, and therefore was not subject to the jurisdiction of the Court under the Texas long arm statute, TEX.REV.CIV. STAT.ANN., art. 2031b (Vernon Supp. 1985). The trial court held further that to subject Interpol to the jurisdiction of this state would violate the due process requirements of the United States Constitution. We disagree and reverse.

On appeal, appellant challenges the trial court's findings and conclusions that it lacked long arm jurisdiction over appellee and that an exercise of jurisdiction over appellee would violate due process. Appellant asserts there is no evidence, or, alternatively, insufficient evidence to support findings made by the trial court.

Determining whether a nonresident defendant may be subjected to the jurisdiction of a foreign state requires two inquiries. The threshold inquiry is whether the law of the forum state provides for the exercise of jurisdiction under the circumstances of the particular case. If state law provides jurisdiction, the next question is whether an exercise of jurisdiction under the state's law would comport with the due process requirements of the fourteenth amendment to the United States Constitution. *Atwood Hatcheries v. Heisdorf & Nelson Farms*, 357 F.2d 847, 852 (5th Cir. 1966).

The special appearance motion was tried to the court in an evidentiary hearing which produced evidence requiring the reversal. On December 30, 1980, Interpol entered into a letter agreement with Lewis Energy Corporation (Lewis) whereby Interpol was to purchase an undivided twelve and one-half percent (12½%) working interest in certain oil and gas leases and options located in Live Oak and Karnes Counties, Texas. The consideration to be paid by Interpol for the assignment of the leases was: (1) $11,000 as a management fee; (2) $50.00 per net acre plus a brokerage fee;

and (3) $107,122 by December 31, 1980, to ensure rig availability. Interpol was to pay its 12½% interest of the cost of drilling the initial test well. Thereafter, Interpol's share of the costs of drilling was to be paid from its share of production. The parties expressly agreed to enter into an operating agreement.

Pursuant to this primary contract Interpol and Lewis executed an operating agreement whereby Interpol agreed to participate in the drilling of an oil well and Lewis was designated as the operator of the well. Interpol argues that it was to receive ownership of its percentage interest in the leases and options after the well was drilled to a certain depth ("casing point"). Although drilling operations began and Interpol paid its share of the drilling costs up to a certain point, the well was never drilled to "casing point." Disagreements arose between Interpol and Lewis over the operation of the well. Lewis subsequently filed Chapter 11 bankruptcy proceedings from which Texas Commerce claims it received an assignment of Lewis' accounts receivable.

■ Texas Commerce brought suit against Interpol to recover drilling costs allegedly owed by Interpol under the operating agreement. However, the operating agreement does not appear of record; only the primary contract was introduced at the evidentiary hearing. Interpol does not dispute that an operating agreement was executed; only that it was never consummated. Interpol claims that, because the well never reached "casing point," the operating agreement never covered Interpol's participation in the venture. According to Interpol, it was to receive record title to its interest in the leases only after the well was drilled to the objective depth. Interpol argued, and the trial court seemed to agree, that since it did not hold record title to any interest in the leases it owned no real property interest in Texas land; and,

thus, there was no basis for jurisdiction.[1] This argument misses the point. The point of inquiry is not whether the purchase of the oil and gas interests was completed, but whether the act of entering into, and partially performing, a contract to purchase oil and gas leases in Texas constitutes "doing business" in Texas and whether an exercise of jurisdiction by a Texas court based upon these acts would violate due process.

The following are the jurisdictional facts relevant to this appeal. Interpol is a Colorado limited partnership which is not registered to do business in Texas. Lewis was a Colorado corporation. Both the primary contract and the operating agreement were negotiated and executed in Colorado. Interpol had no knowledge of any assignment by Lewis to Texas Commerce until after Lewis went into bankruptcy. Aside from the leases involved in the present suit, Interpol never had any interest in nor operated any property in Texas. The record establishes that most of Interpol's contacts with Texas center around its contract with Lewis.

In response to appellant's request for admissions, Interpol admitted the following contacts with Texas: (1) it entered into an agreement with Lewis for the sale of an undivided twelve and one-half percent (12½%) working interest in and to certain leases and options to acquire leases in Live Oak and Karnes Counties, Texas; (2) it agreed to the drilling of one or more wells in Texas; (3) it has purchased goods or services to be delivered or rendered in Texas; (4) it agreed in the joint operating agreement that the law of the state of Texas, where the contract area is located, governed all matters and disputes pertaining to the contract; (5) that some performance of the contract between Interpol and Lewis occurred or was to occur in Texas; (6) that at least four of its limited partners are residents of Texas. The contract expressly provided that Interpol had access to and

---

1. Under Texas law, an oil and gas lease gives the lessee a determinable fee in the oil and gas in place, which is also an interest in land. *Sheffield v. Hogg*, 77 S.W.2d 1021, 1024 (Tex.1934);

*Roach v. Chevron U.S.A., Inc.*, 574 S.W.2d 200, 203 (Tex.Civ.App.—San Antonio, 1978, no writ). Thus, the object of the contract was the acquisition of real property interests in Texas.

the right to maintain representatives at the well site, though there is undisputed evidence that Interpol never exercised these rights. Additionally, appellee admitted at the hearing that it entered into the contract with Lewis with the intention of profiting from the purchase of the leases. The contract further provided that the parties would enter into a tax partnership covering certain of the option leases at a later date.

■ Initially, our determination of the jurisdictional issues in this case is soley based on the relationship between Interpol and Lewis with no consideration given to Texas Commerce's interest in this suit. Any interest Texas Commerce may have resulted from an assignment transaction between Lewis and Texas Commerce and not from any affirmative act on the part of Interpol. The fact that a Texas resident may now be the obligor under this contract is merely fortuitous, and, therefore, may not be considered as a factor upon which jurisdiction may be founded. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, (1958).

Since Interpol is not a resident of Texas and is not registered to do business in Texas, the only statutory provision upon which jurisdiction may be based is TEX. REV.CIV.STAT.ANN. art. 2031b(3) (Vernon 1964). This long-arm statute provides that if such a nonresident engages in business in Texas, it is deemed to have appointed the Secretary of State of Texas as agent upon whom service may be had in any action arising out of its activities in this State, wherein the nonresident is a party or is to be made a party. "Doing business" in Texas is defined in Section 4 as:

> [f]or the purpose of this Act, *and without including other acts that may constitute doing business*, any foreign corporation, joint stock company, association, partnership, or nonresident natural person shall be deemed doing business in this State *by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State*, or the committing of any tort in whole or in

party in this State. The act of recruiting Texas residents, directly or through an intermediary located in Texas, for employment inside or outside of Texas shall be deemed doing business in this State. [emphasis added].

TEX.REV.CIV.STAT.ANN. art. 2031b(4) (Vernon Supp.1985).

Appellee strongly asserts that appellant failed to plead the necessary jurisdictional facts in order to extend long-arm jurisdiction. In its petition appellant alleged that appellee had done business in Texas by entering into an agreement with Lewis to explore and develop oil and gas leases in Texas. Appellee argues that, because this is a suit upon a contract, appellant invoked only the "contractual act" portion of Article 2031b(4). Since Interpol contracted with a Colorado resident and not a Texas resident, it is not subject to the literal reach of the "contractual act" provision, thus long-arm jurisdiction cannot be extended. Appellee's argument is without merit.

■ A nonresident defendant has the burden of proof at a Rule 120a special appearance hearing to negate all bases of personal jurisdiction. *Siskind v. Villa Foundation for Education, Inc.*, 642 S.W.2d 434, 438 (Tex.1982). Regardless of whether appellant's jurisdictional allegations were actually defective, it was held recently that such issues must be challenged by a motion to quash and not by special appearance. *Kawasaki Steel Corp. v. John G. Middleton, d/b/a Middleton Oil Co.*, 28 TEX.SUP.CT.J. 607, 609 (Sept. 18, 1985).

■ The contract and tort provisions of Article 2031b which provide grounds for the assertion of jurisdiction are not an exclusive listing of what constitutes "doing business." *See Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1266 n.7 (5th Cir.1981). The Texas Supreme Court has interpreted the phrase "and without including other acts that may constitute doing business" in Article 2031b(4) as providing for the expansion of the scope of long-arm jurisdiction to

the limits of due process. *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex.1982), *rev'd*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 493 (1984); *U-Anchor Advertising v. Burt*, 553 S.W.2d 760, 762 (Tex.1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). *See also Rosemont Enterprises, Inc. v. Lummis*, 596 S.W.2d 916, 920 (Tex. Civ.App.—Houston [14th Dist.] 1980, no writ); *Hoppenfeld v. Crook*, 498 S.W.2d 52, 56 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.); Thode, *In Personam Jurisdiction and the Appearance to Challenge Jurisdiction in Texas and Elsewhere*, 42 TEX. L.REV. 279, 308 (1964). The Supreme Court reasoned that this expansive construction was desirable because "it allows the courts to focus on the constitutional limitations of due process rather than to engage in technical and abstruse attempts to consistently define 'doing business.'" *U-Anchor*, 553 S.W.2d at 762. Interpol is not immune from an assertion of jurisdiction by a Texas court simply because its contract to acquire and exploit Texas real estate interests was not made with a Texas resident.

■ Appellee argues that, if both contracting parties are nonresidents and the nonresident defendant has few contacts with the forum, there can be no long-arm jurisdiction asserted even though the contract was to be performed in Texas. This argument was expressly rejected in *Rosemont Enterprises, Inc. v. Lummis*, 596 S.W.2d at 920.

■ Section 3 of Article 2031b limits the reach of the statute to "any action, suit, or proceedings arising out of such business done in this [s]tate." In this regard, Article 2031b is narrower than due process limits in that it appears to require a nexus between the cause of action and the nonresident defendant's contacts with the forum. In contrast, due process allows an assertion of jurisdiction over a nonresident defendant in a cause of action unrelated to its contacts with the forum if those contacts are continuous and systematic. *Perkins v. Benquet Consolidated Mining Co.*, 342 U.S. 437, 446, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952). At present, Texas law is unsettled regarding whether a nexus is required in all situations.[2]

■ Despite that uncertainty, a nexus is necessary for the assertion of jurisdiction in those instances in which the non-resident defendant maintained single or few contacts with the forum. *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d at 872. Because Interpol had few contacts with Texas, our courts could exercise jurisdiction over it only in suits arising out of those contacts. Interpol's primary contact with Texas was its partially performed contract to purchase and explore Texas oil and gas interests, and the instant suit arises from that contact. Here the nexus requirement has obviously been satisfied.

■ Appellee argues that the trial court's unchallenged finding of fact to the effect that it had no contacts with Texas regarding this contract is binding on this Court. Appellee is only correct to a point. *De La Fuente v. Home Savings Ass'n*, 669 S.W.2d 137, 141 (Tex.App.—Corpus Christi 1984, no writ); *Adams v. American Quarter Horse Ass'n*, 583 S.W.2d 828, 833 (Tex. Civ.App.—Amarillo 1979, writ ref'd n.r.e.). Appellant did challenge the trial court's ruling on a similar finding of fact which we hold was sufficient to challenge the trial court's determination that the nexus requirement had not been satisfied. The trial court made two findings in this regard:

33. Defendant Interpol '80 Limited Partnership never engaged in any pur-

---

**2.** In *O'Brien v. Lanpar Company*, 399 S.W.2d 340 (Tex.1966), the Texas Supreme Court established a three-pronged test for determining the constitutionality of exercising jurisdiction over a particular nonresident defendant, the second of which was the nexus requirement. Yet, in *Hall v. Helicopteros Nacionales de Colombia*, 638 S.W.2d 870, 872, the Court held that, although the second prong of the test was useful in any situation involving a jurisdictional question, it is unnecessary when the nonresident defendant's contacts with the forum are of such a nature as to satisfy "the demands of the ultimate test of due process."

poseful act in the State of Texas in reference to the transaction which is the subject matter of Plaintiff's lawsuit.

34. Defendant Interpol '80 Limited Partnership had no contact with the State of Texas in reference to the transaction which is the subject matter of Plaintiff's lawsuit.

Appellant specifically challenged finding No. 33, but failed to challenge finding No. 34. Both findings are conclusory, erroneous and not supported by any evidence in the record.

We sustain appellant's point of error No. 1(a) challenging the legal sufficiency of finding No. 33. It is undisputed that Interpol purposely entered into a contract to purchase and develop oil and gas interests in Texas and that Interpol purchased goods and services to be delivered or rendered in Texas. This suit arose out of the performance of this contract in Texas and was brought pursuant to the contract.

By contracting to acquire these real property interests and participating in the drilling of an oil well with the intent to profit from the venture, Interpol was clearly doing business in Texas. We hold that Interpol's participation in this transaction with Lewis was sufficient "other acts" to constitute doing business within the scope of Article 2031b(4).

Our next consideration is whether an extension of jurisdiction would overstep the bounds of due process. In Texas, the due process test of minimum contacts as set out in the following cases: *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), has been interpreted in *O'Brien v. Lanpar Company*, 399 S.W.2d 340, 342, (Tex.1966) (quoting *Tyee Construction Co. v. Dulien Steel Products, Inc.*, 62 Wash.2d 106, 381 P.2d 245, 251 (1963), to require that:

(1) [t]he nonresident defendant ... must purposefully do some act or consummate some transaction in the forum state;

(2) the cause of action must arise from, or be connected with, such act or transaction; and

(3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality and nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protections of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

We have found that the second prong of the test has been satisfied as set forth hereinbefore.

The touchstone of the minimum contacts test is whether the nonresident defendant has "purposefully availed" itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the forum's laws. *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239; *Product Promotions v. Cousteau*, 495 F.2d 483, 494 (5th Cir.1974); *U-Anchor*, 553 S.W.2d at 763. It is not the number of the defendant's contacts with the forum that is controlling, but it is the quality and nature of these contacts that is important.

The act of entering into a contract to be performed in a foreign state may constitute transaction of business in that state for due process purposes, regardless of how it is considered for long-arm purposes. *Quasha v. Shale Development Corp.*, 667 F.2d 483, 488 (5th Cir.1982); *Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co.*, 623 F.2d 375, 382 n. 5 (5th Cir.1980). Here, Interpol's contacts with Texas were deliberate. It entered into a contract in Colorado which was performable in Texas and was calculated to extract profits and other benefits (e.g., tax advantages) from Texas land. *See Uvalde Rock Asphalt Co. v. Consolidated Carpet Corp.*, 457 S.W.2d 649, 652 (Tex.Civ.App.—Beaumont 1970, writ ref'd n.r.e.). Appellee

intended to acquire real property interests in Texas. It intended to develop these interests and was looking to profit from its investment. Appellee voluntarily entered into a contract it had reason to know would have consequences in Texas. *See Quasha v. Shale Development Corp.*, 667 F.2d at 489; *Product Promotions*, 495 F.2d at 497.

■ There are additional aspects of appellee's relationship with Texas which help to satisfy the "purposeful availment" requirement. In its contract with Lewis, appellee contracted to have the right to maintain its own representatives at the well site. Under the contract, Lewis was the operator and was to control and supervise drilling operations. However, such a contractual right, whether exercised or not, does suggest that Interpol foresaw the possibility of further contacts with Texas. *Product Promotions*, 495 F.2d at 497 n. 24.

Additionally, Interpol agreed that Texas law would govern any disputes arising out of its contract with Lewis. *See First Commerce Realty Investors v. K-F Land Co.*, 617 S.W.2d 806, 809 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); RESTATEMENT (Second), CONFLICT OF LAWS § 187(1) (1971). Appellee argues that although it agreed to this provision, it never anticipated any litigation or use of Texas courts. That Interpol did not contemplate any breach of contract does not mean it was not reasonably foreseeable that the contract might be enforced in Texas courts. Appellee contracted to have its obligations enforced, as well as its rights protected, according to Texas law. While Texas law could be applied by any court with jurisdiction in this matter, the fact that Interpol contracted for the benefits and protections of Texas law is at least some evidence that it anticipated the use of Texas courts.

■ Next, we determine whether requiring Interpol to litigate the cause of action in Texas would offend traditional notions of fair play and substantial justice. In making this determination, we must balance the various interests involved in order to decide whether it would be fair and reasonable to require Interpol to defend this suit in Texas. We consider whether Texas has a legitimate interest in providing a forum for the resolution of this matter. Further, we consider the relative convenience of the parties and the basic equities of the situation.

■ In order to assert *in personam* jurisdiction over a non-resident defendant, the state must have a sufficient interest in the litigation. *Curtis Publishing Co. v. Birdsong*, 360 F.2d 344, 346–47 (5th Cir. 1966). It is not necessary that either of the litigants be residents of the forum for the forum to have an interest in the cause of action. It has been held that a state has a special interest in contracts regarding the negotiation and sale of mineral property located within the state. *Quasha v. Shale Development Corp.*, 667 F.2d at 486. This interest in the litigation becomes even stronger when, as here, the contract has been partially performed in that drilling operations have begun, and goods and services have been delivered and rendered within the forum.

■ Choice of law rules are also relevant to this issue, though not controlling. *Prejean*, 652 F.2d at 1268 n. 15; *Quasha*, 667 F.2d at 487. Regardless of whether the cause of action is brought in Colorado or Texas, the accepted choice of law principles provide that the law of the state which is the situs of the property would govern the validity of the contract to sell the property and the rights created thereby. *Quasha*, 667 F.2d at 487; RESTATEMENT (Second), CONFLICT OF LAWS § 189 (1971). In Texas, the choice of law rule applicable in this instance is that, if a contract is made in one state but relates to and is to be performed in another state, the law of the place of performance governs. *Castilleja v. Camero*, 414 S.W.2d 424, 426 (Tex.1967); *Smith v. Bidwell*, 619 S.W.2d 445, 449 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

■ Although formation of the contract occurred in Colorado, it was to be performed in Texas, the purpose being to

exploit the natural resources of Texas. Thus, even under the "most significant relationship" test of the Restatement, Texas has a legitimate and even special interest in this suit. RESTATEMENT (Second), CONFLICT OF LAWS § 188 (1971). *See Energy Oils, Inc. v. Montana Power Co.*, 626 F.2d 731, 734 n. 6 (9th Cir.1980); *Wood Brothers Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 601 P.2d 1369, 1373 (1979) (en banc). It should also be remembered that Interpol agreed to be governed by Texas law in matters arising under this contract. Though a state's interest in a suit by itself is not enough to provide a basis for jurisdiction, it "can serve to enhance the contacts with the forum to a quality that justifies the assertion of jurisdiction." *Prejean*, 652 F.2d at 1269 n. 15. Interpol argues that Colorado has a special interest in providing a forum for this dispute because the contract was negotiated and executed there. While we agree Colorado has an interest in this suit, we conclude that it is overridden by Texas' special interest in this matter. *See generally, Quasha*, 667 F.2d 483.

■■■ The relative convenience of the parties is another enhancing factor to be examined. *Prejean*, 652 F.2d at 1269 n. 15. While the inconvenience of the forum is to be considered, it is not a constitutional obstacle to the assertion of jurisdiction if due process is otherwise satisfied. *Oliver v. Boutwell*, 601 S.W.2d 393, 395 (Tex.Civ. App.—Dallas 1980, no writ). Based on the facts and equities of this case, we conclude that any inconvenience Interpol may suffer defending this suit in Texas would not amount to a denial of due process.

While the extent of Interpol's contacts with Texas is minimal, the quality and nature of those contacts is substantial. We hold that the maintenance of this suit in Texas will not offend traditional notions of fairness and substantial justice.

■■■ The parties to this suit essentially do not dispute the facts. Primarily, the disputes center on the legal effect of the facts. The following conclusions of law

made by the trial court are challenged by appellant:

[a] [d]efendant Interpol '80 Limited Partnership was not engaged in business in the State of Texas.

[b] [d]efendant Interpol '80 limited Partnership is not subject to the jurisdiction of this Court under the Texas Long Arm Statute, art. 2013b.

[c] [t]he exercise of jurisdiction by this Court over [d]efendant Interpol '80 Limited Partnership would be in violation of due process requirements of the United States Constitution.

Though the factual findings of a trial court in a case tried before the court without a jury are binding upon the appellate court if there is evidence to support them, the conclusions of law made by the trial court are not binding. We conclude that the trial court made erroneous legal conclusions and that these errors probably caused the rendition of an improper judgment. *Smith v. Smith*, 620 S.W.2d 619, 625 (Tex.Civ.App. —Dallas 1981, no writ); *Hoyt v. Geist*, 364 S.W.2d 461, 464 (Tex.Civ.App.—Houston 1963, no writ); *Foster v. Buchele*, 213 S.W.2d 738, 746 (Tex.Civ.App.—Fort Worth 1948, writ ref'd n.r.e.); TEX.R.CIV. P. 434 (Vernon 1985).

■■■ Finally, appellee forcefully argues that, based on the record, the appellant lacks standing to sue in this cause because there is no proof in the record of the actual assignment from Lewis to Texas Commerce, and, therefore, the trial court's dismissal of the suit was proper. Regardless of the merits of appellee's argument, it has no relevance to this appeal. TEX.R. CIV.P. 120a (Vernon Supp.1985) states in pertinent part:

a special appearance may be made by any party ... for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this [s]tate ... Such special appearance shall be made ... prior to

motion to transfer venue or any other plea, pleading, or motion. . . .

This procedure was designed only to allow a nonresident defendant to challenge the power of the state court to exercise jurisdiction over the defendant's person or property based on the claim *asserted*. *Kawasaki Steel Corp.*, 28 TEX.SUP.CT.J. at 608; *Steve Tyrell Productions, Inc. v. Ray*, 674 S.W.2d 430, 434 (Tex.App.—Austin 1984, no writ). A special appearance is a specific procedural mechanism to litigate one issue, and strict compliance is required. *N.F. Abramowitz v. Miller*, 649 S.W.2d 339, 342 (Tex.App.—Tyler 1983, no writ). The relationship at issue in such a proceeding is that between the court and the nonresident defendant, and not that between the plaintiff and the cause of action. Amenability, not standing, is the only issue to be determined at a special appearance hearing.

We hold that the trial court erred in dismissing this cause for want of jurisdiction. Interpol is amenable to process under Article 2031b. An exercise of this jurisdiction does not violate due process. The cause is REVERSED and REMANDED for trial.