**TOWN EAST FORD SALES, INC., Appellant,**

v.

**Fred J. GRAY, Appellee.**

**No. 05–86–00426–CV.**

Court of Appeals of Texas, Dallas.

April 23, 1987.

**800**

Bruce A. Pauley, Mesquite, for appellant.

Lewis R. Sifford, Craig L. Stahl, Dallas, for appellee.

Before DEVANY, STEWART and ROWE, JJ.

## ON MOTION FOR REHEARING

DEVANY, Justice.

Our opinion of March 4, 1987, is hereby withdrawn, and the following is substituted therefor.

This appeal is brought by Town East Ford Motor Company as the result of a judgment for Fred Gray arising from the sale to him of a 1983 LTD Ford automobile. Town East presents sixteen points of error. For the reasons stated hereinafter, we reverse the judgment in part and reform it, and, as reformed, we affirm it.

The facts of this case are fairly simple, but the complexity arises from the manner in which the case was tried and, particularly, the manner in which it was presented to the jury. The facts as they must have appeared to the jury are as follows: Gray went to the Town East dealership on February 11, 1983 to purchase a new automobile. There he met Smith, a salesman for Town East, who assisted Gray. Gray told Smith he wanted to purchase a new Ford LTD, but that he had been experiencing problems with the carburetor of his old 1979 LTD and he wanted assurances about the new 1983 model. Smith satisfied Gray about the new 1983 LTD, explaining that they had put a new model of carburetor in the 1983 LTDs. Gray purchased the automobile that very day, trading in his old 1979 LTD for $2,500.00 on the brand new 1983 LTD. Part of the purchase price was financed by Gray through Ford Motor Company's lending agency.

Almost immediately Gray experienced the very problems he feared: the carburetor was defective. Less than a week after he bought the car, Gray returned to Town East and asked for his money and his old car back. Town East refused, stating that they had already sold his other car. Instead, Town East offered to service the car to repair it. Town East repeatedly serviced the automobile and eventually replaced the carburetor twice. In the meantime, another problem arose: the braking system developed a defect and this was also serviced by Town East. Over a period of six months, Town East installed four new master brake cylinders in an attempt to correct the problem. When Gray grew dissatisfied with Town East's service on the brakes, he took the car to Weaver Spring and Brake. The first time that Gray took the car to Weaver Spring, Weaver recommended that a new master brake cylinder be installed. Weaver sent Gray back to Town East for the work because the car was still under warranty. The second time that Gray went to Weaver was on August 9, 1983, whereupon Weaver once again tested the car and recommended that a new master brake cylinder be installed. Weaver installed the new master brake cylinder, but wrote a letter to Gray stating that, because of the history of the car's brake problems, it could not guarantee the work. Town East also installed two brake boosters over the six months period.

The testimony also revealed that Gray had tried to return the car to Town East and get his money back on several other occasions, but Town East refused. Finally, after the second repair by Weaver, the brake system and carburetor problems were apparently cured, and the car was working satisfactorily. However, since Gray had no assurances that the problems were permanently cured, he was concerned about the vehicle's safety. Because he was concerned about the safety of his family, Gray parked the automobile in his garage on August 15, 1983, with 10,000 miles on the odometer, and bought another automobile.

Gray then sued Town East for deceptive trade practices under the Deceptive Trade

Practices Act (DTPA) [1] and for fraud under the common law on the purchase of the 1983 LTD Ford. The jury returned a verdict for Gray under both causes of action, and, pursuant to the doctrine of election of remedies, the trial court awarded Gray damages under the DTPA, including prejudgment interest, of $21,246.45. The trial court then trebled the damages, awarding Gray a total of $63,739.35 plus attorney's fees.

## I. ACTUAL DAMAGES

Because of the complexity of this case, we will address the points of error in groups, not necessarily in numerical order. In their second and third points of error, Town East claims that there is no evidence, or in the alternative, insufficient evidence, to support the jury's findings of actual damages. We agree as to the damages based on the value of the car and the damages for mental anguish, and we reverse and render on those points. We affirm the damages based on loss of use of the car.

 In reviewing "no evidence" points of error, our standard of review requires us to consider only that evidence, and reasonable inferences therefrom which, viewed in its most favorable light, supports the jury finding. We must reject all evidence and inferences to the contrary. *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400, 401 (Tex.1981). When confronted with both "no evidence" and "insufficient evidence" points, we will address the "no evidence" points first. *Glover*, 619 S.W.2d at 401. The sustaining of a "no evidence" point reverses the judgment of the trial court and requires a rendition. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

### A. *Market Value of the Car*

 We first address Town East's point that there was no evidence to support the jury finding of $8,632.45 as damages for "the difference between the actual cost

of the 1983 Ford LTD automobile and the value of the automobile in its defective condition." This is the correct *measure* of damages in a DTPA action based upon the sale of an automobile. *Vista Chevrolet, Inc. v. Lewis*, 704 S.W.2d 363, 371 (Tex. App.—Corpus Christi 1985), *aff'd in part and rev'd in part*, 709 S.W.2d 176 (Tex. 1986). However, in order to sustain such a finding of damages, there must be evidence of both the actual amount paid by the buyer and the actual market value of the car as received in its defective condition. At trial, the evidence showed that the price of the car was $11,132.45. Gray offered the testimony of several witnesses in his attempt to prove the market value of the car as delivered in its defective condition. Gray testified first, as follows:

Q: "Do you have an opinion about what the market value of that automobile is *to you as it is sitting in that garage right now?*" [October 21, 1985] (Date supplied).

A: "Zero."

. . . . .

Q: "Do you have an opinion concerning *current* market value of that automobile that you own?" [October 21, 1985] (Date supplied).

A: "I consider it to be zero."

. . . . .

Q: "Mr. Gray, when you purchased that car if you knew the problems you were going to encounter would it have been worth what you paid for it?"

A: "No."

Q: "What would it have been worth to you if you had known the problems you were going to have?"

A: "It would have been worth zero *to me* at that time."

Q: "What do you think the market value would have been as it was delivered given those problems?"

MR. PAULEY: "Object, Your Honor. He hasn't laid a proper predicate for that question."

1. All references to the DTPA refer to TEX.BUS. & COM.CODE ANN. §§ 17.41–17.50 (Vernon Supp.1987).

THE COURT: "Overruled."

Q: [By Mr. Sifford]: "What would have been the market value?"

A: "*As far as I'm concerned* it would have been a zero at that time."

(Emphasis added.) This testimony is no evidence of the market value of the car at the time it was delivered. Proof of market value at the time of trial is no evidence of value at the time of acceptance. *Overseas Motors Corp. v. First Century Christian Church*, 608 S.W.2d 288, 289–90 (Tex.Civ. App.—Dallas 1980, no writ). In order for an owner of property to testify concerning the *market value* of his property, as distinguished from its value to him, he must show that he is qualified to do so. *Vista Chevrolet, Inc. v. Lewis*, 704 S.W.2d 363, 371 (Tex.App.—Corpus Christi 1985), *aff'd in part and reversed in part*, 709 S.W.2d 176 (Tex.1986) (car owner's testimony that car was worth "zero" to her was no evidence of actual market value, therefore, court of appeals should have reversed and rendered rather than remanded). An owner is qualified to testify if he states that he *knows* the market value of his property. *Vista*, 704 S.W.2d at 371. Gray did not state that he *knew* the market value of his car at the time of delivery in its defective condition. There is no evidence in the record here that Gray was familiar with the actual market value of his automobile as of the time he received it in its defective condition. There is no evidence that he knew the actual market value of other similar automobiles, or that his testimony referred to anything other than the subjective value of the automobile to him. *Vista*, 704 S.W.2d at 371. Furthermore, the jury awarded Gray only $8,632.45, an amount $2,500 less than the price he paid for the car. We, therefore, infer that the jury found the market value of the car, as delivered to Gray in its defective condition, to be worth $2,500. Gray's testimony is no evidence to support this figure.

■ Gray claims that, even if he was not qualified to testify about the value of the car, another witness, Dennis Washkowiak, was qualified, and that his testimony is sufficient evidence of the car's market value at the time Gray received it. Washkowiak was an appraiser for an insurance company, often appraised automobiles, and was familiar with that 1983 LTD because he rode to work with Gray on a regular basis. However, although Washkowiak may have been qualified to testify concerning the market value of the car when Gray received it in its defective condition, he did not do so. The sum of Washkowiak's testimony on this issue reads as follows:

Q: "Now, is it your testimony today [June 18, 1984] that this car is totally valueless?" (Date supplied).

A: "Yes."

Q: "It has no scrap value?"

A: "It has some salvage to it, I guess. It's got no value to me. I wouldn't want it.

. . . . .

Q: "Potentially, every car has some value to somebody?"

A: "Yes."

Q: "Just not this car to you at this time?"

A: "Well, I don't believe if a car is functional, can be functionally used, it has no value at all. It may have salvage value if you are dealing with an insurance claim or something like that. But I don't believe the car has any value right now. It's not being used, it's not worth anything. You can't use it. It's not worth anything."

Washkowiak's testimony clearly refers to the market value of the car at the time of trial, not at the time Gray received it.

■ Gray called three other witnesses, who also testified that they would not want his car as it was and would not have paid anything for it. None of this testimony concerns the actual market value of the car as of the time it was received in its defective condition. As stated earlier, we infer from the figure arrived at by the jury that the jury found the market value of the car, as delivered in its defective condition, to be $2,500. There is no basis whatsoever for this finding. The only place in the record where any figure of $2,500 appears is on the sales invoice, where $2,500 is the amount Gray was allowed for the trade-in

value of his 1979 LTD. This has no relationship to the 1983 LTD and is, therefore, no evidence of the market value of the 1983 LTD at the time it was received in its defective condition. Accordingly, we reverse the award of damages in the amount of $8,632.45 and render that Gray take nothing on this point. *Vista Chevrolet, Inc. v. Lewis,* 709 S.W.2d 176, 177 (Tex. 1986).

### B. *Mental Anguish.*

■■■■■ Town East also claims that there is no evidence to support the finding of $5,000 in damages for aggravation and mental anguish. We agree. In the first place, there is no cause of action for damages for aggravation. Aggravation may be one element of damages for mental anguish, but it is not a cause of action in and of itself. *See K-Mart Corporation Store No. 7441 v. Trotti,* 677 S.W.2d 632, 639 (Tex.App.—Houston [1st Dist.] 1984, no writ) (trial court erred in submitting issue to jury allowing recovery for mental anguish and embarrassment since mere embarrassment is not compensable by itself). Secondly, the testimony at trial is no evidence of mental anguish. Fred Gray presented the following evidence to support his claim for mental anguish:

Q: "Have you had a lot of time to think about this case?"

A: "Almost three years."

Q: "Have you been anguished about it?"

A: "You bet."

Q: "Will you tell the Jury generally what it's been like to be involved in this kind of litigation with these kinds of claims?"

A: "Well, it is a continuing strain. Originally it was strain because of the lack of confidence in the brakes, but once the car was set up and not driven any more then it became a strain of hopefully at some point reaching a reasonable disposition of the case and some satisfaction."

Dennis Washkowiak also gave the following testimony on this issue:

Q: "Do you know why he quit using the car?"

A: "I believe he finally got so frustrated with the unsafeness of the car that he had to put it in there. Because other people would ride with him. He's got two children and the car, in his opinion and my opinion, was totally unsafe."

■■■■ In order to establish mental anguish, "a plaintiff must show more than mere worry, anxiety, vexation, embarrassment, or anger." *Roberts v. U.S. Home Corporation,* 694 S.W.2d 129, 136 (Tex. App.—San Antonio 1985, no writ), citing *K-Mart Corporation,* 677 S.W.2d at 639, and *Freedom Homes of Texas, Inc. v. Dickinson,* 598 S.W.2d 714, 718 (Tex.Civ.App. —Corpus Christi 1980, writ ref'd n.r.e.). As the *Roberts* court stated,

> The term "mental anguish" implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, [resentment], or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

694 S.W.2d at 136, citing *Trevino v. Southwestern Bell Telephone Co.,* 582 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1979, no writ).

Gray cites us to *North Star Dodge Sales, Inc. v. Luna,* 653 S.W.2d 892 (Tex. App.—San Antonio 1983), *aff'd in part and rev'd in part,* 667 S.W.2d 115, *on remand,* 672 S.W.2d 304 (Tex.App.—San Antonio 1984, writ dism'd). He claims *Luna* requires us to sustain the jury's finding of damages for mental anguish. We disagree. The plaintiff in *Luna* testified that she was mad, angry, nervous, depressed, and anxious as a result of the car dealer's actions. She also testified that she had developed migraine headaches as a result of the problems with the car dealer. Her psychotherapist also testified that she was suffering from anxiety, tension, and migraine headaches. *Luna,* 653 S.W.2d at 897. This evidence is much more than that offered by Gray. Gray's testimony was that he had been anguished and felt a continuing strain. His testimony indicates no more than mere worry, anger, resentment, and disappointment. We hold that

Gray presented no evidence which could support a finding of mental anguish by the jury; accordingly, we reverse and render as to the $5,000 and order that Gray take nothing.

### C. *Loss of Use*

Next, we address Town East's complaint that there was no evidence, or in the alternative, insufficient evidence, to support the jury award to Gray of $4,906.05 in damages for loss of use of the car. We also address Town East's complaint that the jury used the incorrect measure of damages in determining loss of use. First, we address Town East's claim that the measure of damages was incorrect. Gray did not seek damages for the periods that the LTD was in the repair shop from February to August. Rather, he sought damages from the time he parked the car in his garage in August until the time of trial. Gray did not seek damages for the reasonable rental value of a replacement car; rather, he sought to recover the cost of buying a replacement car. That cost amounted to the $500 downpayment on the replacement vehicle, the $395.00 payment for tax, title and license, and his $160.43 monthly car payment on the replacement vehicle for the 26 months from the time he parked the LTD until the time of trial. The jury awarded precisely this amount, for a total of $4,906.45.

According to *Luna*,

[I]n order to prove loss of use of an automobile, the plaintiff need not rent a replacement automobile or show any amounts actually expended for alternative transportation. We agree with the Washington Supreme Court in *Holmes v. Raffo*, 60 Wash.2d 421, 374 P.2d 536 (1962):

If we were to hold that a plaintiff who has lost the use of his pleasure automobile ... cannot be compensated because he has not hired a substitute automobile, we would be placing upon recovery a condition of financial ability to hire another automobile to take the place of the injured automobile. The law cannot condone such a condition.

He would be denied compensation for his inconvenience resulting from the defendant's wrongful act.

[Citations omitted].... To prove up loss of use, the reasonable rental value of a substitute automobile is sufficient evidence to support an award of actual damages. The period of compensatory loss will be the amount of time the plaintiff was deprived of the loss of use [sic] of the automobile.

*Luna*, 667 S.W.2d at 118–19. This discussion by the supreme court makes it clear that a plaintiff may recover for loss of use of his automobile without actually having to *rent* another car. The evidence at trial showed that it would have cost Gray $804 a month to rent a replacement vehicle from Town East. Rather than spend such an exorbitant amount to rent a car, Gray bought a replacement vehicle for $167 a month. By so doing, Gray actually mitigated his damages. We are not persuaded by Town East's argument that Gray should have sought damages for the reasonable rental value of a replacement vehicle. Gray's damages for loss of use would then have been over $20,000. We see no reason why Gray may not recover his damages for loss of use of the car simply because he chose to buy another car rather than rent one. As the supreme court stated in *Luna*, *"The thing to be kept in view is that the party shall be compensated for the injury done,"* 667 S.W.2d at 119, quoting *Craddock v. Goodwin*, 54 Tex. 578 (1881) (emphasis added by the *Luna* court). In fact, at least one DTPA case has permitted recovery of replacement costs, especially when replacement tended to mitigate damages. *See Hycel, Inc. v. Wittstruck*, 690 S.W.2d 914, 924 (Tex.App.—Waco 1985, writ dism'd). Town East cites us to *Hyder-Ingram Chevrolet, Inc. v. Kutach*, 612 S.W.2d 687 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ) as authority that Gray should not have been permitted to recover the replacement cost of another automobile. However, in *Hyder-Ingram*, the plaintiff only recovered damages for rental payments on an automobile although he also introduced evidence of the replacement price of that automobile, which was greater

than the rental payments. The *Hyder-Ingram* court pointed out that the introduction of evidence as to the cost of the replacement automobile was irrelevant and, therefore, error; but the error was harmless since the jury only awarded the rental payments as damages. In the instant case Gray did not seek a double recovery. Gray only sought to recover the initial costs of acquiring another vehicle as a measure of damages. The evidence showed that these costs were considerably less than the rental value of a replacement automobile, and, therefore, quite relevant as long as only the lesser of the two figures was awarded by the jury. We hold that the measure of damages used in this case was not incorrect. The peculiar circumstances of each case must be considered. *See Luna,* 667 S.W.2d at 119. Since we have held that the measure of damages was appropriate, we now turn to the sufficiency of the evidence. Gray testified that he was making monthly payments of $160.43 on his replacement vehicle. Billy Railsback, the general manager and vice-president of Town East Ford, Inc., calculated the cost of these car payments over the 25-month period from the date Gray parked the car in his garage until the date of trial, arriving at a figure of $4,010.75. Railsback also admitted on the stand that $500 was a reasonable amount as a downpayment on a new car, and that tax, title and license on a new car could cost $395.30. Railsback then added these figures to the $4.010.75 for a total of $4,906.05. Railsback admitted that, if Town East was liable for Gray's loss of use of the 1983 LTD from the day he parked the car until the day of trial, the $4,906.05 figure would be a fair and reasonable amount of damages. We hold that this was some evidence of the damages for loss of use of the car, and that this evidence was sufficient to support the jury's findings. Town East also argues that, since the car was working when Gray parked it for the last time in his garage, Gray should not be able to recover damages for loss of use of the car. Town East claims that Gray's loss of use of the car after that date was not caused by their wrongful act. We disagree. We recognize that Gray's volun-

tary parking of a "working" automobile presents an unusual situation. However, the evidence showed that, the last time the car was repaired, Weaver Spring and Brake wrote Gray a letter stating that, because of the history of the car's brake problems, they could not guarantee their repair job on the brakes. Gray also testified that he had lost confidence in the car because of the repeated brake and carburetor problems. It seems reasonable that he may have been reluctant to sell the car to a third party "victim" who might not want to buy the car with the warnings Gray may have felt obliged to give. He had also attempted to rescind his purchase with Town East, but they had refused to take the car back. While the damages for the loss of the use of the automobile may appear unusual, upon analysis, Gray's actions may have been the most logical recourse, to-wit: not take any further chances with the car, store it, and buy another car. Under these circumstances, we hold it was not unreasonable for Gray to stop driving the car and to stop allowing his children to drive the car, especially since he literally had no guarantee that the brakes would work properly. From this evidence, the jury could have concluded that Gray's loss of use was caused by Town East Ford. We hold that the evidence was sufficient to support the jury award of $4,906.05 for loss of use, and we affirm that portion of the actual damages award. *See Luna,* 667 S.W.2d at 118–19.

## II. THE SPECIAL ISSUES

In its fourth point of error, Town East complains that the trial court erred in overruling their objection to Special Issue No. 10, because (1) it is a comment on the weight of the evidence, (2) it authorizes an improper and incorrect measure of damages, and (3) it authorizes recovery of "aggravation" damages which are not recoverable under the DTPA or under common law. Special Issue No. 10 requested the jury to find the amount of damages Gray was entitled to for the value of the car, loss of use, and mental anguish. Since we have already reversed the damage awards for the value of the car and for mental an-

guish, we need only address these claims insofar as they relate to the issue on loss of use.

■ Special Issue No. 10 reads, in pertinent part,

Find from a preponderance of the evidence the amount of money which fairly and reasonably compensates Fred J. Gray for his actual damages, if any, which you have found from a preponderance of the evidence resulted from the transaction in question.

. . . . .

2. The loss of use of the 1983 Ford LTD automobile.

Answer in dollars and cents.

ANSWER: ————.

First, Town East claims that the court's failure to include the phrase, "if any" immediately following the phrase, "the amount of money" is a comment on the weight of the evidence. We disagree. The failure to include the phrase "if any" is not a comment on the weight of the evidence such that it would affect the jury's judgment. The issue does include the phrase "if any" after the word "damages"; therefore, the jury could infer that a finding of damages and an award of money was not mandatory. Although the issue could possibly have been worded better, we hold that the wording of special issue 10 was, at worst, harmless error. *See Alvarez v. Missouri-Kansas-Texas Railroad Company*, 683 S.W.2d 375, 378 (Tex.1984).

Town East also claims that Special Issue No. 10 contained an improper measure of damages in that it only asked the jury to find damages for "the loss of use of the 1983 Ford LTD automobile." Town East claims that the issue was overly broad and that it should have limited recovery to the period from February 11, when Gray bought the car, to August 15, when he parked it permanently in his garage. We have already addressed this argument in our discussion under points of error two and three. Town East's fourth point of error is overruled.

■ In its fifth point of error, Town East claims that the trial court erred in overruling its objections to Special Issue No. 10(1) and 10(2) because the issue is unsupported by Gray's pleadings. We disagree. Again, since we have sustained Town East's points of error concerning the damages for the value of the car and for mental anguish, we address this point only as it relates to the issue for loss of use. Gray's pleadings state that he was without the use of the car on several listed dates. The pleadings also state that Gray was required to purchase an additional vehicle and that he "should be reimbursed for the costs of the additional automobile purchased by him." That is exactly what the jury awarded him. Town East's fifth point of error is overruled.

■ In its sixth point of error, Town East complains that the trial court erred in failing to submit its special issue concerning mitigation of damages. We disagree. Since we have affirmed only the damage award for loss of use, we need only consider the mitigation issue as it relates to that point. We agree that an injured party has a duty to minimize his loss; however, the burden of proof as to the extent to which the damages were or could have been mitigated lies with the party who has caused the loss. *See Copenhaver v. Berryman*, 602 S.W.2d 540, 544 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Town East did not submit any evidence showing that Gray failed to mitigate his damages. In fact, with regard to loss of use, the evidence showed that Gray mitigated his damages by buying another car, rather than renting one, to replace the LTD. We hold that the trial court did not abuse its discretion in refusing to submit Town East's special issue on mitigation of damages.

In its ninth, tenth, eleventh, twelveth and thirteenth points of error, Town East claims that the trial court erred in submitting the special issues which asked the jury to determine (1) whether Town East engaged in an unconscionable course of action, (2) whether Town East represented to Gray that the car had characteristics, uses and benefits which it did not have, (3) whether Town East's acts were a producing cause of Gray's damages, and (4)

whether Town East's acts were committed knowingly. Town East claims that there is no evidence, or in the alternative, insufficient evidence, to support the submission of these issues to the jury.

In discussing these points of error, we again apply the principles for no evidence and insufficient evidence points, as we discussed earlier. For a no evidence point, we consider only that evidence which tends to support the jury finding, and we disregard all evidence to the contrary. If there is more than a scintilla of evidence to support the jury's findings, we must uphold them. *Dixon v. Van Waters and Rogers, a Division of Univar Company,* 674 S.W.2d 479, 481 (Tex.App.—Fort Worth 1984), *writ ref'd n.r.e.,* 682 S.W.2d 533 (Tex.1984). In examining an insufficient evidence point, we must examine the entire record as a whole in order to determine whether it supports the verdict. *See In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (Tex.1951). Insufficient evidence points should be sustained "when the record discloses either of the following situations: (a) the evidence is factually insufficient to support a finding of a vital fact, or (b) the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong." Calvert, "No Evidence and Insufficient Evidence Points of Error," 38 TEX.L.REV. 361, 366 (1960).

### 1. *Unconscionable Conduct.*

■ In its ninth point of error, Town East claims that the trial court should not have submitted the special issues to the jury asking whether Town East engaged in unconscionable conduct. Under § 17.45(5), an "unconscionable action or course of action" is defined as follows:

... an act or practice which, to a person's detriment:

(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid

in a transaction involving transfer of consideration.

TEX.BUS. & COMM.CODE ANN. § 17.-45(5) (Vernon Supp.1987). Town East claims that there is no evidence, or in the alternative, insufficient evidence to support the jury's finding of unconscionable conduct on the part of Town East. We disagree. The evidence at trial showed that, while Town East was very experienced about automobiles, Gray knew little about the mechanical operation of a car. Gray bought the car relying on Town East's expertise. The evidence also showed that Town East refused Gray's demands to rescind the purchase, even after repeated attempts to repair the car had failed. There was some evidence that, on some visits, no work at all was done by Town East on the car. Numerous witnesses testified as to the car's defects. For six months, Gray attempted to resolve the problems with the car with Town East, and received no relief. Furthermore, the record is replete with evidence that there was a gross disparity between the value of the Ford LTD received by Gray and the price that he paid for it. We hold that there is some evidence to support the jury's finding that Town East engaged in an unconscionable course of action, and that, examining the record as a whole, there is sufficient evidence to support the jury's finding. Town East's ninth point of error is overruled.

### 2. *Representations.*

■ In its tenth and eleventh points of error, Town East claims that the trial court erred in submitting the special issues to the jury concerning whether Town East made representations to Gray about the standard and quality of the Ford LTD and the standard and quality of the repairs, and whether these representations were false. Town East claims that there is no evidence to support the submission of these issues to the jury, or, in the alternative, that there is insufficient evidence to support the jury's findings. We disagree. The evidence showed that Gray specifically told the salesman, Dennis Smith, that he had had carburetor problems with his 1979 LTD, and that he did not want another LTD

unless the carburetor problems had been fixed. Smith assured him that Ford had corrected the problem in the 1983 models. Smith also told Gray that the car would provide good, dependable transportation. The car required three carburetors, five master brake cylinders, and two brake boosters over a period of six months. Each time Gray picked up the car from Town East's repair shop, he was assured that the problems were fixed, but they continued to occur. We hold that there was ample evidence to support the submission of these issues to the jury, and sufficient evidence to support the jury's findings on these issues. Town East's tenth and eleventh points of error are overruled.

### 3. *Producing Cause.*

In its twelfth point of error Town East claims that there was no evidence, or, in the alternative, insufficient evidence, to support the jury's findings that the acts and practices of Town East were a producing cause of Gray's damages. Again, we disagree. Town East contends that Gray's damages were caused by his own action of parking the car in his garage while it was in good working condition. We have discussed Gray's action earlier in this opinion and we are persuaded that it was not unreasonable. The brakes had been unreliable for over six months, and no repair job would fix them. Furthermore, Weaver Brake had written Gray a letter that they could not guarantee the last repair job on the brakes because of the history of the car's problems. The evidence clearly showed that the car was defective from the time Gray bought it at Town East. We hold that the evidence was sufficient to support the jury's findings that Town East's actions were responsible for Gray's damages. Town East's twelfth point of error is overruled.

### 4. *Knowingly.*

In its thirteenth point of error, Town East claims that the trial court erred in overruling its motion for judgment non obstante verdicto and its motion for new trial because there was no evidence, or in the alternative, insufficient evidence, to support the jury's finding that Town East's acts were committed knowingly. According to *Jim Walter Homes, Inc. v. Valencia*, 690 S.W.2d 239, (Tex.1985), § 17.45 of the DTPA defines "knowingly" as "actual awareness of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim ... but actual awareness may be *inferred* where objective manifestations indicate that a person acted with actual awareness." 690 S.W.2d at 242. The record contains evidence from which the jury could have inferred that Town East acted knowingly. Town East knew that Gray wanted to rescind the contract because the car was defective, and that he was totally unsatisfied with the car, yet they refused to allow him to return the car. There was some evidence that Town East had, on at least one occasion, told Gray that his car was "fixed" when in fact the repair shop had done no work on it at all. There was also evidence that Town East sent two of the master brake cylinders back to its parent company in Detroit because they were defective. We hold that the evidence is sufficient to support the jury's finding that Town East acted knowingly. Town East's thirteenth point of error is overruled.

## III. THE EXHIBITS

In its fourteenth point of error, Town East claims that the trial court erred when it refused to send defendant's exhibit number 28 into the jury room. This exhibit was a letter from Town East's attorney to Gray's attorney, containing an offer to settle. Town East claims that the trial judge admitted the exhibit into evidence and then refused to submit it to the jury. If this was what occurred, it would be error. *See First Employees Insurance Co. v. Skinner*, 646 S.W.2d 170, 172 (Tex.1983). However, this is not what occurred in the present case. At trial, the judge first admitted the exhibit, without allowing it to be read or handed to the jury. He later realized his error and changed his ruling, declaring the exhibit inadmissible as an offer to compromise under TEX.R.EVID. 408. Once he had declared the exhibit inadmissi-

ble, naturally it was proper not to allow the jury to take the exhibit into the jury room. Town East's fourteenth point of error is overruled.

In its fifteenth point of error, Town East claims that the trial court erred in refusing to admit Defendant's Exhibits Nos. 5 and 6 into evidence. Exhibit No. 5 was the automobile purchase invoice dated February 11, 1983, containing both the front and the back sides of the document. The trial court had previously admitted Gray's Plaintiff's Exhibit No. 1, which was the front side only of the same document. Gray's attorney objected to admission of Defendant's Exhibit No. 5 because Town East had only submitted the front of the document to Gray in its response to Gray's request for production. In response, Town East's attorney stated that he had provided a copy of both the front and back of the purchase invoice to Gray at Gray's deposition, but Gray's attorney denied that it was attached to the deposition. The trial court sustained Gray's objection and refused to allow the admission of Defendant's Exhibit No. 5.

Paragraph number 10 on the back side of Defendant's Exhibit No. 5 contains a limitation of express or implied warranties on Town East's part. Town East also offered Defendant's Exhibit No. 6, the "1983 Warranty Facts Booklet for Ford and Mercury Cars and Ford Light Trucks." Gray's attorney objected to its admission, and the trial court sustained the objection. Town East claims the exclusion of these two documents was harmful error. It claims that, since Gray's petition contained allegations that Town East had breached express warranties, the documents should have been admitted, because they were the only evidence of limitation of express and implied warranties by Town East.

We disagree with these contentions. With respect to Defendant's Exhibit No. 5, the trial court had the right to exclude the evidence since Town East had failed to produce the back side of the invoice in discovery. Under Rule 215 of the Texas Rules of Civil Procedure, the trial court has the authority to sanction abuses of discovery. One available sanction is to exclude otherwise admissible evidence. *Olin Corporation v. Dyson,* 678 S.W.2d 650, 655 (Tex.App.—Houston [14th Dist.] 1984), *rev'd on other grounds,* 692 S.W.2d 456 (Tex.1985). The exclusion of evidence as a discovery sanction is within the sound discretion of the trial court and may only be set aside for abuse of discretion. *Texas Employers' Insurance Association v. Meyer,* 620 S.W.2d 179, 180 (Tex.Civ.App.—Waco 1981, no writ).

Town East sought to admit Defendant's Exhibit No. 5 because it contained Town East's standard language concerning the limitation of warranties. Under § 17.42 of the DTPA, it is mandated that a seller may not use such language to escape liability on a DTPA cause of action. *Martin v. Lou Poliquin Enterprises, Inc.,* 696 S.W.2d 180, 185–86 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Defendant's Exhibit No. 6 also contained the language concerning Town East's limitation of warranties. Furthermore, Gray did not receive a copy of the "Warranty Facts Booklet" until after he purchased the car, hence it could not have formed part of the basis of the bargain. Defendant's Exhibits 5 and 6 were, therefore, irrelevant to the DTPA cause of action. We hold that the trial court did not err in excluding the evidence. Town East's fifteenth point of error is overruled.

## IV. CUMULATIVE ERROR

In its sixteenth point of error, Town East claims that, even if none of its other fifteen points of error have validity, the cumulative effect of the trial court's actions amounted to "cumulative error" requiring us to reverse and remand for a new trial. In support of this argument, Town East cites us to *Smerke v. Office Equipment Co.,* 138 Tex. 236, 158 S.W.2d 302 (1941); *Shell Oil Co. v. Rinehart,* 371 S.W.2d 722 (Tex.Civ.App.—El Paso 1963, writ ref'd n.r.e.); and Dahlberg, *Analysis of Cumulative Error in the Harmless Error Doctrine: A Case Study,* 12 TEX. TECH L.REV. 561 (1981). We are not persuaded. According to Dahlberg's article, the cumulative error doctrine has evolved

almost exclusively in cases involving jury argument or jury misconduct. The doctrine has been used as a remedy by which the appellate courts can prevent numerous "harmless" errors, which have occurred throughout a trial, to be used to deprive a party of receiving a fair trial. Both of the cases cited by Town East involve either improper jury argument or jury misconduct in following the court's instructions and answering the special issues. Neither of those situations is presented here.

Furthermore, in order for Town East to prevail on a cumulative error point, it would have to show that, based on the record as a whole, but for the alleged errors, the jury would probably have rendered a verdict favorable to Town East. *Sendejar v. Alice Physicians and Surgeons Hospital, Inc.*, 555 S.W.2d 879, 888 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r. e.). The errors we have reversed in Town East's favor all concern the proof of *damages*, not liability. The jury unquestionably found that Town East was liable to Gray for common law fraud and for violations of the DTPA. We have reviewed the cases concerning cumulative error, but we fail to see how they are germane to the matter before us. In light of our disposition of Town East's other points of error, we disagree with Town East's contentions. Town East's sixteenth point of error is overruled.

### V. PREJUDGMENT INTEREST

■ In its seventh point of error, Town East claims that the trial court erred in awarding prejudgment interest to Gray because Gray failed to properly plead for prejudgment interest, and alternatively, because there can be no prejudgment interest on mental anguish damages in a DTPA case as a matter of law. While Gray may have failed to properly plead for prejudgment interest, Town East has waived this point by failing to support it with arguments and authorities as required by Rule 414 of the Texas Rules of Civil Procedure. In its brief, Town East's seventh point of error is followed by a different argument concerning the trial court's alleged error in *trebling* the prejudgment interest. The ar-

guments and authorities in the text of the brief are unrelated to the point of error concerning Gray's failure to plead for prejudgment interest. In Texas, unsupported points of error are waived and cannot be grounds for reversal. *Blardone's Estate v. McConnico*, 604 S.W.2d 278, 283 (Tex. Civ.App.—Corpus Christi 1980), *writ ref'd n.r.e.*, 608 S.W.2d 618 (Tex.1980); *Hatch v. Davis*, 621 S.W.2d 443, 447 (Tex.Civ.App.— Corpus Christi 1981, writ ref'd n.r.e.). We need not address the claim as to mental anguish damages since we have already reversed the damages on that point. Of course, we will modify the prejudgment interest to be based on the final award of damages resulting from this appeal. Town East's seventh point of error is overruled.

### V. TREBLING OF DAMAGES

■ In its first point of error, Town East complains that the trial court erred in trebling the actual damages because Gray failed to submit a special issue and obtain a jury finding on DTPA discretionary damages. We agree. The trial court submitted the entire jury charge and special issues that were requested by Gray. In its response to Special Issue No. 10 the jury found actual damages in the amount of $18,538.50. The court added $2,707.95 in prejudgment interest for a total of $21,-246.45. The court then trebled this entire amount and awarded Gray judgment in the amount of $63,739.35. We hold that it was error for the court to do so.

Prior to the 1979 amendments to the DTPA, the DTPA required the trial court to treble the actual damages. *See Woods v. Littleton*, 554 S.W.2d 662, 669 (Tex. 1977). In 1979 the DTPA was amended to eliminate the harsh mandatory trebling of damages and replace it with a provision which only required the trial court to treble the first $1,000 of damages, but then permitted the *trier of fact* to give a discretionary award of damages up to three times the amount of actual damages in excess of $1,000. The trier of fact can only make such an award if the *trier of fact* has found that the defendant's acts were committed knowingly. TEX.BUS. & COMM.

CODE ANN. § 17.50(b)(1); *Jim Walter Homes, Inc. v. Valencia,* 690 S.W.2d 239, 241 (Tex.1985).

In the instant case, the jury did find that Town East's acts were committed knowingly; however, Gray failed to request a special issue on DTPA discretionary damages. By failing to request such an issue, he has waived these damages and it was error for the trial court to treble the actual damages in excess of $1,000. The Texas Supreme Court considered this very point in *Martin v. McKee Realtors, Inc.,* 663 S.W.2d 446 (Tex.1984). The court stated:

> The wording of § 17.50(b)(1) compels the conclusion that, in a jury trial based upon the DTPA, a plaintiff who seeks to recover discretionary damages must request a jury issue on such damages. The plaintiff's failure to do so results in a waiver of those damages.

*Martin,* 663 S.W.2d at 448. Therefore, it was error for the trial court to assess such discretionary damages. Town East's first point of error is sustained.

## VI. ELECTION OF REMEDIES

▇▇▇ Gray presents a cross-point wherein he contends that, in the event that we hold that the trial court erred in trebling the damages, it was also error for the trial court to apply the doctrine of election of remedies so as to award Gray damages under the DTPA rather than under common law fraud. It is proper for us to consider such a cross-point. *See Chessir v. First State Bank of Morton, Texas,* 620 S.W.2d 101, 102 (Tex.1981). Gray contends that if we reverse the trial court's awarding of treble damages under the DTPA, we should substitute for it the jury award of $15,000 in exemplary damages for common law fraud. In its judgment, the trial court stated,

> The Court further finds and determines that the verdict of the jury indicates that the Defendant was guilty of misrepresentation and actual malice and common law fraud to entitle the Plaintiff to recover his actual damages, attorney's fees and the amounts awarded for exemplary damages from the Defendant; however, pursuant to the doctrine of election of remedies, the Court finds and determines that the Plaintiff has elected to proceed under the deceptive trade practices claim because such claim renders the higher amount of total damages and recovery in connection with this case.

Because the trial court erroneously trebled the DTPA damages, it also assumed that Gray had elected to proceed under the DTPA, because those damages constituted a greater recovery. Under the doctrine of election of remedies, if a plaintiff pleads more than one theory of recovery, he need not make an election between them until after the verdict. *Deal v. Madison,* 576 S.W.2d 409, 421 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). He is entitled to the greatest relief under either theory that the verdict will support. *Deal,* 576 S.W.2d at 421. Furthermore, when a tribunal erroneously selects to hear and determine a cause of action, such a selection does not amount to an election of remedies so as to bar a later suit in a court of competent jurisdiction. *A.E. Swift & Sons, Concrete Contractors, Inc. v. Sam Sanders, Inc.,* 405 S.W.2d 402, 405–06 (Tex.Civ.App.—Amarillo 1966, no writ). A Court of Appeals has the power to render the judgment that the trial court should have rendered where it appears from the record that the judgment should be modified and justice requires it. *Dawson v. Garcia,* 666 S.W.2d 254, 264 (Tex.App.—Dallas 1984, no writ); *Carter v. Barclay,* 476 S.W.2d 909, 918 (Tex.Civ.App.—Amarillo 1972, no writ).

Gray requested jury issues under both the DTPA and common law fraud. He did not make an election prior to the verdict; instead, the judge made the election for him when he believed that the DTPA produced the greater amount of damages. But since Gray did not request a special issue on discretionary damages under the DTPA, the trial court erred in trebling the damages. The erroneous trebling of the damages caused the trial judge to assume that the DTPA offered the greater recovery.

▇▇▇ The question we face on this appeal is: which theory of recovery now provides the greater relief? If Gray is

awarded his damages under the DTPA, he will receive his $4,906.05 in actual damages for loss of use of the car, plus $2,000 after doubling the first $1,000 of that award, as is mandated by the statute. TEX.BUS. & COMM.CODE ANN. § 17.50(b)(1) (Vernon Supp.1987). Gray is also entitled to recover court costs and attorney's fees under the DTPA. *Id.*, § 17.50(d). The parties stipulated that Gray would be entitled to attorney's fees of $44,923.26 if Gray prevailed on any cause of action for which he would be entitled to recover attorney's fees. We then must decide whether we may consider attorney's fees and court costs in determining which cause of action affords Gray the greater relief. We conclude that we may. Attorney's fees are mandatory when a consumer prevails under the DTPA. *Joseph v. PPG Industries, Inc.*, 674 S.W.2d 862, 867 (Tex.App.—Austin 1984, writ ref'd n.r.e.). § 17.50(d) of the DTPA provides "[e]ach consumer who prevails *shall* be awarded court costs and reasonable and necessary attorney's fees." TEX.BUS. & COMM. CODE ANN. § 17.50(d) (Vernon Supp.1987) (emphasis added). Furthermore, § 17.50 of the DTPA is entitled "Relief for. Consumers." *Id.* Implicitly, then, attorney's fees and court costs are considered a part of the consumer's relief under the statute. Therefore, we conclude that, for the purposes of determining which cause of action affords the greater recovery, we may consider attorney's fees as part of the consumer's recovery under the DTPA. *See Mowery v. Fantastic Homes, Inc.*, 568 S.W.2d 171, 173 (Tex.Civ.App.—Dallas 1978, no writ) (trial court erred in failing to award exemplary damages to plaintiff since plaintiff is entitled to judgment on the theory which affords the greatest recovery); *see also Keller v. Davis*, 694 S.W.2d 355, 358 (Tex.App.—Houston [14th Dist.] 1985, no writ) (attorney's fees may be awarded as a separate element of exemplary damages).

Therefore, Gray's recovery under the DTPA would include $4,906.05 in actual damages, $2,000 after doubling the first $1,000 of actual damages, $44,963.26 in attorney's fees, and court costs, for a total recovery of $51,869.31 plus court costs.

Under his common law fraud claim, Gray would be entitled to $4,906.05 in actual damages and $15,000 in punitive damages. Gray would not be entitled to attorney's fees under his common law fraud claim. *Bray v. Curtis*, 544 S.W.2d 816, 820 (Tex. Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.) (unless attorney's fees are provided by statute or by contract between parties, such fees are not recoverable in tort action); *Phillips v. Wertz*, 579 S.W.2d 279, 280 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.) (expenses incurred in prosecuting suit are not recoverable unless provided for by statute or unless recoverable under equitable principles). Therefore, Gray's recovery under his common law fraud claim would be only $4,906.05 in actual damages, plus $15,000 in exemplary damages, for a total of $19,906.05. We conclude that Gray's DTPA cause of action affords the greater relief.

As an appellate court, we may render the judgment that the trial court should have rendered where the record indicates that the judgment should be modified and justice requires it. *Dawson v. Garcia*, 666 S.W.2d 254, 264 (Tex.App.—Dallas 1984, no writ). We have concluded that the trial court erred in trebling Gray's damages under the DTPA, and in awarding Gray damages for the lost value of the car and for mental anguish. Justice requires that we modify the judgment to correct these errors.

We have further concluded that, even after our modification of Gray's damage award, his DTPA cause of action still affords the greater recovery. Therefore, we reform the judgment to award Gray his damages based on his DTPA cause of action. Pursuant to our discussion above, we reform the judgment to delete the treble damages erroneously awarded by the trial court. We delete the trial court's award of $5,000 for mental anguish, and $8,632.45 for the difference in the market value of the car and the value as received by Gray. We award Gray $4,906.05 in actual damages for loss of use of the car, plus $2,000 by doubling the first $1,000 in damages as required by the statute. We also award Gray the $44,923.26 in attorney's fees and his court costs. The prejudgment interest calculated by the trial court in the amount

of $2,707.95 is deleted. We award prejudgment interest to the date of the trial court's judgment, which amounts to $720.36 on the actual damages only. "[P]rejudgment interest is not recoverable for exemplary damages." *Monsanto Company v. Johnson*, 696 S.W.2d 558, 559 (Tex.1985).

In its motion for rehearing, Town East complains that the evidence is insufficient to support the jury's award of $15,000 in punitive damages based on the common law fraud claim. Since we have concluded, pursuant to the doctrine of election of remedies, that Gray should receive the greater recovery afforded by his DTPA cause of action, we need not address this point.

## VII. ATTORNEYS FEES

■■■■■ In its eighth point of error, Town East claims that the trial court erred in granting judgment for Gray for the stipulated attorney's fees of $44,963.26, because there was no evidence, or in the alternative, insufficient evidence, of actual damages. We disagree. We have already held that Gray did produce sufficient evidence for actual damages for the loss of use of the car. The parties further stipulated that if Town East were unsuccessful on an appeal of this case, a reasonable attorney's fee for Gray for defending the appeal would be $15,000. However, because Town East was successful in attacking two of the three elements of actual damages on appeal, that portion of the judgment awarding $15,000 to Gray is reduced by two-thirds. Therefore, the judgment is further reformed reducing Gray's attorney's fees from $15,000 to $5,000 for this appeal.

As a prevailing plaintiff under the DTPA, Gray is entitled to recover his court costs. TEX.BUS. & COMM.CODE ANN. § 17.50(d). Therefore, the costs of this appeal are assessed against Town East.

The judgment of the trial court is reversed in part and reformed, and as reformed, affirmed.